# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| MICHAEL GOETTING, KIMBERLY WEBB, TERRI EDGELL, and KIMBERLY CHILDS, *on behalf of themselves and all individuals similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ADRIAN SPRATT, RCOFIII SPEC-FIN CREDIT 1, LLC, R&R SPE LLC, JAMIE AZURE, CRAIG LUNDAY, KENNY MALATERRE, JON JON KEPLIN, RON TROTTIER SR., ELMER DAVIS JR., LYNN GOURNEAU, CHAD COUNTS, BLAINE DAVIS, and JOHN DOES Nos. 1-15, <br><br> Defendants. | Civil Action No. 1:25-cv-00794-WO-JLW |

## TRIBAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

i

# TABLE OF CONTENTS

NATURE OF THE MATTER.................................................................................1

STATEMENT OF THE FACTS ............................................................................2

QUESTIONS PRESENTED...................................................................................4

ARGUMENT .........................................................................................................4

    I.     BLUECHIP IS AN ARM OF THE TRIBE ..................................................4

          A.     BlueChip was formed under Tribal law ......................................5

          B.     The Tribe's purpose weighs in favor of immunity....................5

          C.     The Tribe controls BlueChip.........................................................7

          D.     Tribal intent weighs in favor of immunity .................................7

          E.     The financial relationship weighs heavily in favor of
                immunity ...........................................................................................8

    II.    THIS ACTION SHOULD BE DISMISSED UNDER
        FED. R. CIV. P. 12(B)(7) AND 19.............................................................10

          A.     Legal Standard................................................................................10

          B.     BlueChip and the Tribe are necessary parties..........................11

          C.     This Action cannot proceed without BlueChip and the Tribe,
                who are indispensable parties. ....................................................14

    III.   THE COURT LACKS PERSONAL JURISDICTION OVER THE
        TRIBAL DEFENDANTS............................................................................15

           A.     Legal Standard................................................................................15

i

B. Plaintiffs cannot establish personal jurisdiction in North Carolina over the Tribal Defendants. .......................................... 16

IV. THE COMPLAINT FAILS TO STATE A CLAIM. ............................... 20

A. Legal Standard. ........................................................................... 20

B. The Complaint fails to state a RICO claim ............................... 21

C. Plaintiffs cannot bring claims against the Tribal Defendants for alleged violations of the North Carolian Consumer Finance Act or the Georgia Payday Lending Act. .................................... 23

D. The Complaint's extension of state usury law to a Tribal lender is contrary to strong federal policies. ............................. 24

E. Plaintiffs cannot obtain a declaratory judgment without an underlying claim conferring jurisdiction. .................................. 32

F. The Complaint is based on conclusory, conjectural, speculative, and irrelevant statements. ...................................... 32

CONCLUSION ................................................................................................ 34

CERTIFICATE OF COMPLIANCE ............................................................. 36

**TABLE OF AUTHORITIES**

CASES                                                                                    Page(s)

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,*
    293 F.3d 707 (4th Cir. 2002) ...................................................................... 16

*Andrade v. Chojnacki,* 934 F. Supp. 817 (S.D. Tex. 1996) ............................................ 23

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................. 20, 32, 33

*Baltimore & O. S. W. ry. Co. v. Voigt,* 176 U.S. 498 (1900) ........................................... 26

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................. 20, 32, 33

*Blue Mako, Inc. v. Minidis,* 472 F. Supp. 2d 690 (M.D.N.C. 2007) .............................. 17

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort,*
    629 F.3d 1173 (10th Cir. 2010) ............................................................... 5, 7, 8, 28

*California v. Cabazon Band of Mission Indians,* 480 U.S. 202 (1987) ........................... 27

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,*
    334 F.3d 390 (4th Cir. 2003) ...................................................................... 16

*Combs v. Bakker,* 886 F.2d 673 (4th Cir. 1989).................................................... 16

*Eastern Band of Cherokee Indians v. Lynch,* 632 F.2d 373 (4th Cir. 1980).................... 29

*Eastern Band of Cherokee Indians v. North Carolina Wildlife Resources*
    *Commission,* 588 F.2d 75 (4th Cir. 1978) ...................................................... 29, 30

*Electric Motor & Contracting Co., Inc. v. Travelers Indemnity Co. of Am.,*
    235 F. Supp. 3d. 781 (E.D. Va. 2017)............................................................ 32

*Everette v. Mitchem,* 146 F. Supp. 3d 720, 725 (D. Md. 2015) .................................... 9

*Exela Pharma Sciences, LLC v. Sandoz, Inc.,*
    486 F. Supp. 3d 1001 (W.D.N.C. 2020) ......................................................... 33

iii

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,* 592 U.S. 351 (2021) ............................ 15

*Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400 (5th Cir. 2015) . 22

*Gunvor SA v. Kayablian,* 948 F.3d 214 (4th Cir. 2020) ..................................... 10, 11, 14

*Harman v. Unisys Corp.,* 356 F. App'x 638 (4th Cir. 2009) ........................................... 33

*Hengle v. Asner,* 433 F. Supp. 3d 825 (E.D. Va. 2020) .................................................. 22

*Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427 (4th Cir. 2014) ........................ 11

*Howard v. Plain Green, LLC,* No. 2:17cv302, 2017 WL 3669565
    (E.D. Va. Aug. 7, 2017) ........................................................................................... 9

*Indian Harbor Ins. Co. v. French,* 555 F. Supp. 3d 273 (E.D. Va. 2021) ...................... 32

*James v. Subaru of America, Inc.,* 433 F. Supp. 3d 933 (W.D. Va. 2020) ..................... 17

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,*
    940 F.2d 397 (9th Cir. 1991) ................................................................................. 22

*Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.,*
    439 U.S. 299 (1978) ........................................................................................... 25, 26

*Michigan v. Bay Mills Indian Cmty.,* 572 U.S. 782 (2014) ............................................ 10

*Montana v. Crow Tribe of Indians,* 523 U.S. 696 (1998) ............................................... 28

*Muschany v. United States,* 324 U.S. 49 (1945) ............................................................. 31

*New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324 (1983) ................................. 28, 29

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,*
    498 U.S. 505 (1991) ................................................................................................. 4

*R-Delight Holding LLC v. Anders,* 246 F.R.D. 496 (D. Md. 2007) ................................ 2

*Ransom v. GreatPlains Finance, LLC,* 148 F.4th 141 (3d Cir. 2025) ............................. 8

iv

*Republic of Philippines v. Pimentel,* 553 U.S. 851 (2008) ..........................................14-15

*Roberts v. Equian, LLC*, 793 F. Supp. 3d 643 (D. Md. 2025) ........................................ 2

*Severn Peanut Co., Inc. v. Industrial Fumigant Co.,* 807 F.3d 88 (4th Cir. 2015) ....... 31

*Smith v. Babbit,* 875 F. Supp. 1353 (D. Minn. 1995) ................................................... 22

*Sonoco Products Co. v. ACE INA Ins.,* 877 F. Supp. 2d 398 (D.S.C. 2012) ................ 18

*United States v. Griffin,* 660 F.2d 996 (4th Cir. 1981) ................................................. 21

*United States v. Tillett,* 763 F.2d 628 (4th Cir. 1985) ................................................... 21

*Walden v. Fiore,* 571 U.S. 277 (2014) ............................................................................ 17

*Washington v. Confederated Tribes of Colville Indian Rsrv.,* 447 U.S. 134 (1980) ........ 27

*White Mountain Apache Tribe v. Bracker,* 448 U.S. 136 (1980) ......................... 27, 28, 29

*Whitney, Bradley & Brown, Inc. v. Kammermann,* 436 F. App'x 257 (4th Cir. 2011) . 21

*Williams v. Big Picture Loans, LLC,* 929 F.3d 170 (4th Cir. 2019) ........................*passim*

*Williams v. Martorello,* 143 F.4th 555 (4th Cir. 2025),
    *pet'n for certiorari docketed,* 25-829 (Jan. 13, 2026) ................................. 13, 15, 27

*Yashenko v. Harrah's NC Casino CO., LLC,* 446 F.3d 541 (4th Cir. 2006)....... 11, 12, 14

STATUTES AND RULES

N.C. Gen. Stat. § 53-166 ................................................................................................. 23

Fed. R. Civ. P. 12(b) ..............................................................................................*in passim*

Fed. R. Civ. P. 19 ................................................................................................... 1, 11, 12

12 U.S.C. § 85 ................................................................................................................. 25

12 U.S.C. § 5517(o) ........................................................................................................ 25

v

18. U.S.C. § 1962 ........................................................................................... 21

18 U.S.C. § 1965 ............................................................................................ 19

Georgia Payday Lending Act, O.C.G.A. § 16-17-2 .................................................. 23

Georgia Payday Lending Act, O.C.G.A. § 16-17-3 .................................................. 23

National Bank Act of 1864 ............................................................................ 25, 26

U.S. Const. art. I, § 8, cl. 3 ............................................................................... 27

Case 1:25-cv-00794-DAB-JGM    Document 25    Filed 01/19/26    Page 7 of 43

## NATURE OF THE MATTER

Plaintiffs brought this lawsuit relating to loans they took out from BlueChip Financial, d/b/a Spotloan ("BlueChip"). Plaintiffs have not named BlueChip as a defendant because BlueChip enjoys sovereign immunity. Instead, the Complaint names as defendants Sam Spratt, Jamie Azure, Craig Lunday, Kenny Malaterre, Jon Jon Keplin, Ron Trottier Sr., Elmer Davis Jr., Lynn Gourneau, Chad Counts, and Blaine Davis (collectively, the "Tribal Defendants"), who are BlueChip's CEO, the elected Tribal chairman, and elected Tribal Council members, respectively.

Plaintiffs allege that BlueChip violated state and federal laws by issuing allegedly usurious loans to consumers. But BlueChip is fundamentally different from the other lending operations Plaintiffs describe in their Complaint. BlueChip is wholly owned by the Turtle Mountain Band of Chippewa Indians (the "Tribe"). BlueChip is serviced by a Tribally owned Section 17 corporation, Mikinok Enterprises, pursuant to a shared services agreement. The Tribe does not have any outside service provider. In 2024, BlueChip contributed $46 million to the Tribe.

Because BlueChip is an arm of the tribe, it enjoys Tribal sovereign immunity. The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) and 19.

1

The Complaint should also be dismissed because in their efforts to circumvent the Tribe's sovereign immunity, the Plaintiffs named BlueChip's CEO, the Tribe's chairman, and the individual members of the Tribal Council as defendants. But none of those individuals has any connection to North Carolina. Plaintiffs cannot establish specific personal jurisdiction over the Tribal Defendants, particularly in their individual capacities.

Finally, the Complaint also should be dismissed under Rule 12(b)(6) because its allegations violate federal policy and otherwise fail to state a claim.

## STATEMENT OF THE FACTS

BlueChip was created by the Tribe under Tribal law and is wholly owned by the Tribe. (Spratt Decl. ¶2.)[1] BlueChip is licensed by the Tribe's Lending Regulatory Commission pursuant to the Tribe's Lending Code. (*Id.* ¶19.)

As permitted under Tribal law, BlueChip offers personal, standard-amortizing, simple interest installment loans that are unsecured to consumers via e-commerce. (*Id.* ¶¶29-32.) These differ from "payday" loans because the consumer chooses a repayment schedule over a period of months and because

---

[1] The Tribal Defendants only rely on the supporting Declarations for the aspects for which doing so is procedurally proper and do not rely on them for their Rule 12(b)(6) motion. *See Roberts v. Equian, LLC*, 793 F. Supp. 3d 643, 653 (D. Md. 2025) (court may consider affidavits for a Rule 12(b)(2) motion); *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007) (court may consider affidavits on a motion to dismiss for failure to join a necessary party).

2

consumers cannot roll one loan over into another. (*Id.* ¶31.) Annual interest rates on these loans range from 99% to 490%. (*Id.*)

The Tribe also owns Mikinok Enterprises, a Section 17 corporation approved by the Bureau of Indian Affairs. (*Id.* ¶11.) As of January 1, 2025, all BlueChip employees were transferred to Mikinok. (*Id.* ¶13.) Mikinok provides services to BlueChip pursuant to a shared services agreement. (*Id.*)

The Tribe controls both Mikinok and BlueChip. As part of the Mikinok restructure, the Tribal Council appointed three individual members of the Tribe to serve as the directors of Mikinok and as the directors of BlueChip. (*Id.* ¶12.)

In 2024, the Tribe received a $46 million distribution from BlueChip, constituting 70 percent of the Tribe's non-federal revenue in 2024. (Azure Decl. ¶3.) That revenue funded a variety of government programs, including but not limited to: Tribal land investments, repayment of Tribal loans, Tribal salaries and bonuses, Tribal programming such as pow-wows and sports programming, home improvement for enrolled members, equipment purchases such as maintenance vehicles and recycling facilities, and funding for the Tribal Council Assistance Program. (*Id.* ¶4.) BlueChip and Mikinok do not make distributions or share profits with any other person or entity. (Spratt Decl. ¶16.)

Spratt is the CEO of BlueChip and Mikinok. (*Id.* ¶¶7, 13.) Azure is the Tribe's elected chairman. (Azure Decl. ¶2.) Lunday, Malaterre, Keplin, Trottier,

Davis Jr., Gourneau, Counts, and Davis are the elected members of the Tribal Council. (*Id.* ¶8.) No Tribal Defendant lives in North Carolina. (*Id.*)

## QUESTIONS PRESENTED

1. This matter involves loans issued by BlueChip. BlueChip enjoys sovereign immunity. Can the case proceed against BlueChip's CEO, the Tribal chairman, and the Tribal Council members without BlueChip or the Tribe as defendants?

2. The Tribal Defendants do not reside in North Carolina and do not have personal connections to North Carolina. May this Court exercise personal jurisdiction over them?

3. Has the Complaint stated a legally valid and plausible claim for relief against the Tribal Defendants?

## ARGUMENT

## I. BLUECHIP IS AN ARM OF THE TRIBE.

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories.'" *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)). A tribe's immunity "remain[s] intact when a tribe elects to engage in commerce using tribally created entities, *i.e.*, arms of the tribe . . . ." *Big Picture Loans*, 929 F.3d at 176.

4

To determine whether an operation constitutes an arm of the tribe, the Fourth Circuit (like other circuits) applies the factors from *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort,* 629 F.3d 1173 (10th Cir. 2010). *See Big Picture Loans*, 929 F.3d at 177. Those nonexhaustive factors are (1) the entity's method of creation; (2) its purpose; (3) its structure, ownership, and management, including the amount of control the tribe has over the entity; (4) whether the tribe intended for the entity to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entity; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entity.[2] *Breakthrough*, 629 F.3d at 1181. Here, each factor weighs in favor of immunity.

### A. BlueChip was formed under Tribal law.

For the method of creation, courts "focus on the law under which the entities were formed" and "[f]ormation under tribal law weighs in favor of immunity." *Big Picture Loans*, 929 F.3d at 177.

The Tribe formed and chartered BlueChip under Tribal law. (Spratt Decl. Ex. A at 1.) The Tribe retained "all rights and authority over the property and

---

[2] The Fourth Circuit later held that the sixth *Breakthrough* factor—"whether the purposes underlying tribal sovereign immunity would be served by granting an entity immunity" – informs the entire arm-of-the-tribe analysis and is not a separate factor. *Big Picture Loans*, 929 F.3d at 177.

activities described herein, including but not limited to legislative, regulatory, adjudicatory, and taxing powers." (*Id.*) BlueChip was chartered under the Turtle Mountain Tribal Code of Corporations. (Spratt Decl. Ex. B.) BlueChip's corporate powers are granted by Tribal law. (*Id.* §4.) BlueChip is regulated by the Tribe's Lending Regulatory Commission. (Spratt Decl. ¶19.)

BlueChip was formed under Tribal law, is governed by Tribal law, and is regulated by a Tribal regulator. This factor weighs in favor of immunity.

### B. The Tribe's purpose weighs in favor of immunity.

The tribal purpose factor "incorporates both the stated purpose for which the [entity was] created as well as evidence related to that purpose." *Big Picture Loans*, 929 F.3d at 178. Tribal economic development and tribal self-sufficiency satisfy the goals of tribal self-governance. *See id.*

The Tribe articulated BlueChip's purpose in the resolution establishing BlueChip:

> [T]he Turtle Mountain Band of Chippewa Indians desires to create a tribal entity for economic development and governmental purposes whose profits and assets (upon dissolution) are distributable for the benefit of the tribal membership through distributions to the tribal government, and which may participate in all aspects of lending money to individuals pursuant to tribal law.

(Spratt Decl. Ex. A at 1.) BlueChip's Tribal Charter also recognizes this purpose. (Spratt Decl. Ex. B, §2.) This factor weighs in favor of immunity.

6

### C. The Tribe controls BlueChip.

The third factor, control, "examines the structure, ownership, and management of the entities, 'including the amount of control the Tribe has over the entities." *Big Picture Loans*, 929 F.3d at 182 (citing *Breakthrough*, 629 F.3d at 1191). "Relevant to this factor are the entities' formal governance structure, the extent to which the entities are owned by the tribe, and the day-to-day management of the entities." *Id.*

BlueChip is wholly owned by the Tribe. (Spratt Decl. ¶2.) The Tribe manages BlueChip by appointing its board of directors. (*Id.* ¶20.) Spratt, the CEO, is a Mikinok employee subject to control of Mikinok's board of directors and ultimately the Tribal Council. (*Id.* ¶¶ 17, 20-26.) Mikinok must regularly report to the Tribal Council and submit an annual budget and business plan. (*Id.* ¶¶22-23.) The tribal control factor weighs in favor of immunity.

### D. Tribal intent weighs in favor of immunity.

In analyzing tribal intent, a court assesses "the tribe's intent to extend its immunity to the entities." *Big Picture Loans*, 929 F.3d at 184. "This factor focuses solely on whether the Tribe intended to provide its immunity to the [e]ntities." *Id.*

In chartering BlueChip, the Tribe stated that BlueChip "is clothed by federal law with all the privileges and immunities of the Tribe, except as

<div align="center">7</div>

specifically limited herein, including sovereign immunity from suit in any state, federal or tribal court." (Spratt Decl. Ex. B at § 5(a).) BlueChip's sovereign immunity can only be waived by an express joint resolution of BlueChip's board of directors and the Tribal Council. (*Id*. § 5(b).) This factor weighs in favor of immunity.

### E. The financial relationship weighs heavily in favor of immunity.

The financial relationship between the Tribe and the entity is the most important factor. *See Ransom v. GreatPlains Finance, LLC*, 148 F.4th 141, 149 (3d Cir. 2025) ("Between those two factors, the effect on the tribe's treasury may matter more."). "[C]ourts consider the extent to which a tribe 'depends … on the [entity] for revenue to fund its governmental functions, its support of tribal members, and its search for other economic development opportunities,'" and that "[i]f a judgment against the entity would significantly impact the tribal treasury, this factor will weigh in favor of immunity even if the tribe's liability for an entity's actions is formally limited." *Big Picture Loans*, 929 F.3d at 184 (quoting *Breakthrough*, 629 F.3d at 1195).

BlueChip distributed $46 million to the Tribe in 2024. (Spratt Decl. ¶14.) This distribution accounted for 70 percent of the Tribe's non-federal revenue. (Azure Decl. ¶3.) The Tribe used funds from BlueChip to pay for significant governmental services: home improvement for Tribal members, equipment

8

upgrades, a Tribal Council Assistance Program, salaries and bonuses for Tribal workers, and donations to fund cultural and community programming. (*Id.* ¶4.)

BlueChip also supports Tribal self-sufficiency and economic development. The Tribe has used millions of dollars distributed by BlueChip to repay Tribal loans. (*Id.* ¶4(d).) Repaying those loans improved Tribal economic sustainability and financial independence. The Tribe has also used millions of dollars provided by BlueChip to make land investments, not only protecting the Tribe's culture but promoting its sustainability and growth. (*Id.* ¶4(e).)

Like in *Big Picture Loans*, BlueChip has provided a significant portion of the Tribe's revenue, subsidized many important traditional governmental services, and promoted Tribal self-sufficiency and economic development. *See Big Picture Loans*, 929 F.3d at 184-85; *see also Howard v. Plain Green, LLC*, No. 2:17cv302, 2017 WL 3669565, at *4 (E.D. Va. Aug. 7, 2017) (finding the fifth factor satisfied because the lender's "profits inure to the benefit of the Tribe"); *Everette v. Mitchem*, 146 F. Supp. 3d 720, 725 (D. Md. 2015) (finding sovereign immunity applied when "the tribes use revenue from MobiLoans and Riverbend to fund the provision of governmental services to tribal members").

Notably, "an entity's entitlement to tribal immunity cannot and does not depend on a court's evaluation of the respectability of the business in which a tribe has chosen to engage. Accordingly, the potential merit of the borrowers'

<div align="center">9</div>

claims against" the entities "and the lack of a remedy for those alleged wrongs-do[] not sway the tribal immunity analysis. It is Congress—not the courts—that has the power to abrogate tribal immunity." *Big Picture Loans*, 929 F.3d at 185 (citing *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014)).

<div align="center">*     *     *</div>

Each factor weighs in favor of immunity. BlueChip is an arm of the tribe and shares its immunity.

## II. THIS ACTION SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(7) AND 19.

Knowing that it cannot sue BlueChip or the Tribe, Plaintiffs sued the Tribal chairman, Tribal Council members, and BlueChip's CEO. That tactic does not permit Plaintiffs to circumvent the Tribe's immunity. Plaintiffs cannot challenge the legality of the Tribe's lending operation without BlueChip as a party.

### A. Legal Standard.

This Court should dismiss the Complaint if plaintiffs have "fail[ed] to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "When adjudicating a motion under Federal Rule of Civil Procedure 19, a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020). "Dismissal, though 'a drastic remedy that should be employed only sparingly,' is 'required' if the nonjoined party 'is both necessary and

<div align="center">10</div>

indispensable.'" *Id.* at 219 (citing *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 433 (4th Cir. 2014)).

### B. BlueChip and the Tribe are necessary parties.

Rule 19 provides that a necessary party is one without whom "the court cannot accord complete relief among existing parties," or who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19.

Without the Tribe or BlueChip as a Defendant, the Court cannot accord complete relief among the parties. Any judgment against the Tribal Defendants would not prevent BlueChip, a non-party, from continuing lending. *See Yashenko v. Harrah's NC Casino CO., LLC,* 446 F.3d 541, 553 (4th Cir. 2006). The Tribe retains sovereign authority over its reservation and contractual relationships, which cannot be bound by a judgment in the Tribe's absence, so any judgment accords only incomplete relief, at best. *Id.* For example, neither Spratt nor the Tribal Council members can forgive BlueChip's loans or provide other non-monetary relief with respect to those loans. And any monetary relief awarded from Spratt

11

or the Tribal Council members would really come from the Tribe's treasury, not from those individual defendants.

Second, BlueChip and the Tribe both "claim[] an interest relating to the subject of the action." *See* Fed. R. Civ. P. 19. Plaintiffs' claims allege that loans issued by BlueChip subject to Tribal regulation and with terms governed by Tribal laws, are void and unenforceable. BlueChip, the entity issuing the loans, therefore holds a significant economic interest in the enforcement (or voiding, as Plaintiffs request) of its loan agreements with customers.

The Tribe maintains a substantial economic interest in the success and operations of BlueChip that support the Tribe's governmental services. Aside from the Tribe's direct financial interest, the Tribe has a broader interest in protecting and preserving its economic activity. The Tribe also maintains a sovereign interest in enforcing its laws and all contracts governed by them. Indeed, a judgment on Plaintiffs' claims "would threaten 'to impair the [Tribe]'s contractual interests, and thus, its fundamental economic relationship with' [BlueChip], as well as 'its sovereign capacity to negotiate contracts and, in general, to govern' the reservation." *See, e.g., Yashenko*, 446 F.3d at 553.

Third, both the Tribe and BlueChip are so situated such that disposing of the action in their absence may "impair or impede" their "ability to protect the interest." *See* Fed. R. Civ. P. 19. Plaintiffs named the Tribe's elected officials as

12

defendants. Forcing those elected officials to defend this suit that should not be cognizable necessarily undermines the Tribe's interest by involuntarily depriving the Tribe of its sovereign immunity. It also undermines the interest of the Tribe by applying state law in derogation of Tribal law and regulation.

This case is fundamentally different from *Williams v. Martorello*, 143 F.4th 555 (4th Cir. 2025), *pet'n for certiorari docketed*, 25-829 (Jan. 13, 2026). In that case, a judgment was entered against Matt Martorello, a lender affiliated with the Lac Vieux Desert Band of Chippewa Indians. That case involved unique facts not present here: the parties negotiated a settlement in which the Tribe waived its sovereign immunity. *Id.* at 559. The finding that the Tribe would not be prejudiced by the suit proceeding against Martorello turned on the existence of the settlement agreement with the Tribe. *Id.* Here, no such settlement exists. BlueChip and the Tribe would be prejudiced by an adjudication of the legality of their lending operation in their absence, by a damages award that the Tribe's treasury would bear, and by an order voiding loans made by BlueChip that inure to the benefit of the Tribe. While in some circumstances a tort claim can proceed against some tortfeasors without others, Plaintiffs cannot turn their contract dispute into a tort claim for the reasons discussed below. And doing so would deprive the Tribe of its sovereign immunity—a significant injury to the Tribe's interest.

13

### C. This Action cannot proceed without BlueChip and the Tribe, who are indispensable parties.

BlueChip and Plaintiffs are the only parties to the contracts in this case. And "a contracting party is the paradigm of an indispensable party." *Kayablian*, 948 F.3d at 221 (quotation and citation omitted). BlueChip is therefore indispensable and the case cannot proceed without it.

Any judgment on Plaintiffs' claims "would prejudice the Tribe's economic interests in the [servicing a]greement with [BlueChip] and its interests as a sovereign in negotiating contracts and governing its reservation," and "[a]t the same time, any such judgment rendered in the absence of the Tribe would prejudice [BlueChip] because it would hinder its ability to resolve its contractual obligations with the Tribe." *See, e.g., Yashenko*, 446 F.3d at 553. And "there is no way to shape the relief sought in such a way as to mitigate this prejudice" to BlueChip and the Tribe, as this case centers around the legality of BlueChip's loan agreements with customers. *Id.* Finally, "any judgment entered without joining" the Tribe and BlueChip "would be inadequate because it would bind only" the named parties, leaving the Tribe and BlueChip free to continue their existing practices. *Id.*

"[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Republic of Philippines*

14

*v. Pimentel*, 553 U.S. 851, 867 (2008). Because the Tribe, and BlueChip, enjoy sovereign immunity, "there is 'very little need' to perform a traditional factor-based inquiry under Rule 19(b)." *See Martorello*, 143 F.4th at 562-63 (discussing the impact of an absent sovereign on the Rule 19 analysis in other circuits). Without a settlement agreement like that in *Martorello*, the absence of the Tribe and BlueChip obviate the need for a detailed Rule 19 inquiry. This matter should be dismissed because it is a transparent attempt to invalidate the Tribe's laws, regulations, and source of governmental funding.

Furthermore, the outcome of Rule 19 in this instance is not as harsh as in other cases where a plaintiff would be deprived of any remedy. Here, Plaintiffs have a remedy: each Plaintiff agreed to individual arbitration, and BlueChip waived its sovereign immunity for that method of dispute resolution. (*See* Sprat Decl. in support of Mtn. to Compel Individual Arbitration.) Plaintiffs should pursue their claims in arbitration.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER THE TRIBAL DEFENDANTS.

#### A. Legal Standard.

A court must have either general or specific personal jurisdiction over each defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). To survive a challenge under Fed. R. Civ. P. 12(b)(2), the plaintiff must prove that the court has personal jurisdiction by a preponderance of the evidence. *See*

15

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion" to hold that it lacks jurisdiction. *Id.* at 393, 402-403.

### B. Plaintiffs cannot establish personal jurisdiction in North Carolina over the Tribal Defendants.

To evaluate specific personal jurisdiction,[3] courts "consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 397 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711-12 (4th Cir. 2002)). To establish specific jurisdiction, plaintiffs must show that "the defendant's contacts with the forum state also provide the basis for the suit." *Id.*

Here, none of the Tribal Defendants personally took any action in or directed into North Carolina. The Tribal Defendants are the elected government of a Tribe located in North Dakota and the CEO of a Tribal entity. That Tribal entity, BlueChip, issued loans from the Tribe's reservation through e-commerce

---

[3] The Complaint does not allege general personal jurisdiction.

<div align="center">16</div>

to Plaintiffs,[4] but BlueChip is not a defendant here because Plaintiffs know they cannot sue it. *BlueChip's* alleged contacts with North Carolina do not establish personal jurisdiction over *the Tribal Defendants*.

To avoid this outcome, Plaintiffs rely on group pleading and conclusory allegations. Both strategies are insufficient to establish personal jurisdiction.

Personal jurisdiction is evaluated on a defendant-by-defendant basis, and a specific defendant must have contact with the forum itself, not just with a plaintiff. A defendant's relationship with a forum state must arise out of contacts that the "defendant *himself*" creates with the forum, not with the plaintiff or other third parties, and the plaintiff cannot be the only link between the defendant and the forum. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). Failing to identify with particularity each defendant's contacts with the jurisdiction is fatal to a Plaintiffs' claims, as the Court assesses Defendants' jurisdictional contacts independently. *See, e.g.*, *Blue Mako, Inc. v. Minidis*, 472 F. Supp. 2d 690, 701 (M.D.N.C. 2007) ("Contacts between related corporate entities are generally not imputed one to another"); *James v. Subaru of America, Inc.*, 433 F. Supp. 3d 933, 939 (W.D. Va. 2020) ("In a case where defendants have a relationship with one another, a court

---

[4] BlueChip's website clearly states that its services are provided from the Reservation. (Spratt Decl. ¶29.)

<div align="center">17</div>

must evaluate the individual acts of each defendant, not the acts of other, related defendants, when considering whether personal jurisdiction exists.").

Here, no Tribal Defendant had contact with North Carolina as a forum. While BlueChip had a contract via e-commerce with Plaintiffs, that is insufficient to establish that BlueChip personally availed itself of North Carolina as a forum. But even if a court in North Carolina could exercise personal jurisdiction over BlueChip, it would not be able to exercise personal jurisdiction over the Tribal Defendants based on BlueChip's contacts with North Carolina.

Plaintiffs cannot rely on group pleading to avoid personal jurisdiction. Examples of improper group-pleading permeate the Complaint. *See, e.g.*, Compl. ¶1 ("Defendants have continued to originate new loans, which impose triple digit interest rates in blatant violation of usury laws"). These types of allegations are designed to paper over the fact that the Complaint is intentionally directed at the wrong defendants to attempt an end run around sovereign immunity. None of the Tribal Defendants originated a single loan—BlueChip is the lender.

Conclusory statements about conspiracies do not establish personal jurisdiction. *See Sonoco Products Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 405 (D.S.C. 2012) ("A court . . . need not 'credit conclusory allegations or draw farfetched inferences" in determining whether a plaintiff has proven personal jurisdiction). A plaintiff must show personal jurisdiction over each defendant

18

independently, not through the contacts of others. Invocations of conspiracy do not transfer personal jurisdiction contacts from one party to another.

RICO does not permit Plaintiffs to avoid establishing personal jurisdiction either. Setting aside the fact that Plaintiffs' RICO claim should be dismissed for other reasons, subsection 1965(d) only permits service of non-summons process. Subsection 1965(b) permits nationwide service of a summons on other parties after service is perfected on one defendant and so long as service is consistent with the "ends of justice." 18 U.S.C. § 1965(b). Here, Plaintiffs have not shown that any defendant is subject to service of process in North Carolina, nor have Plaintiffs shown that permitting service on the Tribal Defendants comports with the "ends of justice." Forcing the Tribal Defendants into court in North Carolina—particularly where their only alleged connection is based on BlueChip's loans to Plaintiffs—does not comport with due process or the ends of justice for the same reasons that specific personal jurisdiction does not exist over them.

Worse, Plaintiffs purport to bring certain claims against the Tribal Defendants in their individual capacities, not their official capacities. But the Tribal Defendants have absolutely no connection to North Carolina outside their official capacities as the CEO of BlueChip and members of the Tribal Council of the government that owns BlueChip. Again, Plaintiffs have crafted their claims to

19

avoid known subject matter defects, but in doing so they created a situation where the claims as pleaded violate the due process limits on personal jurisdiction.

Plaintiffs cannot establish subject matter jurisdiction over BlueChip because it enjoys sovereign immunity. They cannot establish personal jurisdiction over the Tribal Defendants because they did not have contact with North Carolina. But Plaintiffs cannot take a mix-and-match approach to jurisdiction. If Plaintiffs want to sue BlueChip, they need to address the sovereign immunity issue. If Plaintiffs want to sue the Tribal Defendants, they must show why those specific defendants—not BlueChip—are subject to personal jurisdiction in North Carolina. Plaintiffs cannot have it both ways.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM.

### A. Legal Standard.

Courts dismiss a cause of action when the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

20

elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level," and contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell*, 550 U.S. at 555.

### B.  The Complaint fails to state a RICO claim.

Plaintiffs have failed to state a claim in Counts I and II against the Tribal Defendants under 18 U.S.C. §§ 1962(c)-(d) ("RICO"). A civil RICO claim has four essential elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011). Specifically, (1) Plaintiffs' Complaint fails to prove the existence of an "enterprise", and (2) the Tribe cannot form the requisite intent to violate RICO.

To demonstrate the existence of an "enterprise" under RICO, a plaintiff must prove that an "association exists separate and apart from the pattern of racketeering activity in which it engages." *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985). The association must have had an existence beyond that which was necessary to commit the predicate activities. *Id.* at 632. A "pattern of racketeering activity" does not establish an "enterprise." *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1981). Rather, the enterprise must have "an ongoing organization, formal or informal," and its members must "function as a

21

continuing unit" that exists "separate and apart" from the predicate racketeering acts themselves. *Id.*

Here, Plaintiffs collapse the distinctions in the enterprise needed to establish a RICO claim. Plaintiffs plead no separate acts taken by any of the Tribal Defendants. They are only named as defendants because they are the CEO and the Tribal Council members of BlueChip. Without specific predicate acts they committed or some other allegations showing an enterprise separate and apart from the fact that BlueChip has a CEO and a Tribal owner, Plaintiffs have not established a viable RICO claim.

Separately, governmental entities, such as tribes, cannot form the requisite *mens rea* to violate RICO. *See Hengle v. Asner*, 433 F. Supp. 3d 825, 880 (E.D. Va. 2020); *see, e.g., Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) (holding that "government entities are incapable of forming a malicious intent. . . ." and "specific intent to deceive" is an element of the predicate act on which the RICO claim is based); *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015) ("RICO requires demonstrating an underlying criminal act, which entails a mens rea requirement that a governmental entity cannot form."). Multiple district courts have extended this reasoning specifically to tribal governments. *See, e.g., Smith v. Babbit*, 875 F.Supp. 1353, 1365 (D. Minn. 1995) (holding that "[a]bsent a congressional or

22

tribal waiver, the [Indian] Community, like other sovereigns, is immune from suit for alleged RICO violations"); *Andrade v. Chojnacki*, 934 F. Supp. 817, 831 (S.D. Tex. 1996) (same).

Simply put, Plaintiffs cannot transform a run-of-the-mill claim against BlueChip into a RICO claim simply by suing BlueChip's CEO and the Tribe's elected officials. Doing so would permit any plaintiff to sue any business for a RICO claim by alleging that the company engaged in an enterprise with its own officers and directors simply because a company has officers and directors.

Furthermore, because BlueChip is a Tribal entity, it necessarily cannot form the requisite intent to violate RICO, and Plaintiffs again cannot circumvent that limitation on RICO claims by suing the Tribe's elected officials. Permitting such a tactic would effectively overturn the precedent that RICO claims cannot lie against a governmental entity.

**C. Plaintiffs cannot bring claims against the Tribal Defendants for alleged violations of the North Carolina Consumer Finance Act or the Georgia Payday Lending Act.**

Counts IV and V fail to state a claim against the Tribal Defendants for alleged violations of the North Carolina Consumer Finance Act, N.C. Gen. Stat. § 53-166, and the Georgia Payday Lending Act, O.C.G.A. §§ 16-17-2, 16-17-3. These claims again show the disconnect between the allegations in the Complaint and the named defendants.

23

The North Carolina Consumer Finance Act generally applies to the terms of a loan between a creditor and a borrower, and to loan servicers. The Tribal Defendants were not the creditor or servicer on any loan to Plaintiffs. BlueChip was the creditor, but Plaintiffs did not sue BlueChip. Plaintiffs also cannot show that the Tribal Defendants received any money from them. Rather, Plaintiffs made payments of both principal and interest to BlueChip, who is not a defendant. Similarly, the Tribal Defendants did not make or collect any loans as required to state a claim under Georgia law. Plaintiffs do not allege that any of the Tribal defendants made a loan to them—BlueChip did. And there is no allegation that any Tribal Defendant acted as an agent of BlueChip in making loans to Plaintiffs—the CEO and Tribal Council would not have had a role in negotiating with any of the Plaintiffs. Put plainly, the claims under both states' statutes fail because Plaintiffs did not sue the actual lender. The Court should dismiss Counts IV and V for failure to state a claim against the Tribal Defendants.

### D. The Complaint's extension of state usury law to a Tribal lender is contrary to strong federal policies.

Further, the Court should dismiss the Complaint because it violates federal policies. Federal law and policy (1) permit national lending without a national usury limit, (2) promote Tribal economic development, and (3) encourage freedom to contract. The central theory of the Complaint is contrary to all three.

24

Through a comprehensive framework of federal statutes, Supreme Court precedent, and regulatory authority, banks operate under federal preemption that shields them from state usury limitations and similarly precludes the effective application of a national usury cap. This saves lenders from needing to navigate the varying and sometimes contradictory regulations that exist on a state-to-state level.

Congress has avoided passing any nationwide interest rate limit and has expressly prohibited its primary federal consumer protection regulator from establishing a national usury rate. 12 U.S.C. § 5517(o) ("No provision of this title shall be construed as conferring authority on the bureau to establish a usury limit applicable to an extension of credit offered or made by a covered person to a consumer, unless explicitly authorized by law.").

Congress embraced streamlined national banking when it enacted the National Bank Act in 1864. *See Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314-15 (1978) ("Close examination of the National Bank Act of 1864, its legislative history, and its historical context makes clear that . . . Congress intended to facilitate . . . a 'national banking system.'"). The National Bank Act allows banks providing credit to charge customers whatever interest rate is allowed under the laws of the state where the bank is located, regardless of where the consumer is located. 12 U.S.C. § 85; *see also Marquette*

25

*Nat'l Bank*, 439 U.S. at 301 (allowing a Nebraska bank to charge its Minnesota credit card customers interest rates greater than those allowed under Minnesota laws because the bank was located in Nebraska, which permitted those higher rates). This is true even if the consumer never actually sets foot in the bank's home state. *Marquette Nat'l Bank*, 439 U.S. at 311.

In *Marquette National Bank*, the Supreme Court recognized the importance of predictability in bank transactions:

> If the location of the bank were to depend on the whereabouts of each credit-card transaction, the meaning of the term "located" would be so stretched as to throw into confusion the complex system of modern interstate banking. . . . We do not choose to invite these difficulties by rendering so elastic the term "located."

*Id*. at 312.

Applying the state laws of North Carolina to loans issued by a Tribal lender under Tribal law would create the sort of impractical regime that the Supreme Court warned against in *Marquette National Bank*. The enforceability of the loan could change depending on the location of the consumer at any moment in time. Additionally, a lender who has complied with every state and federal law could suddenly become subject to liability simply because a consumer moved to a different state. This result is detrimental to orderly economic development and is contrary to the federal policy expressed in *Marquette National Bank* and the National Bank Act of 1864.

26

Federal policy also preempts the application of state law to tribal lenders under the Indian Commerce Clause. The Indian Commerce Clause grants Congress—not the States—the power "[t]o regulate Commerce . . . with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3; *Martorello*, 143 F.4th at 564. Because tribal sovereignty is "is dependent on, and subordinate to, only the Federal Government, not the States," "state laws may be applied to tribal Indians on their reservations if Congress has *expressly so provided*." *Martorello*, 143 F.4th at 564 (first quoting *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987); then quoting *Washington v. Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 154 (1980)) (emphasis added). State regulatory authority can be preempted by federal law. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142 (1980). Because Congress has chosen not to create a national usury limit, and it has chosen to permit lenders to use their state of incorporation to set rate limits, allowing North Carolina to apply its usury limit to tribes outside its state frustrates those federal policies. Furthermore, North Carolina's usury limit is not a law of general application. North Carolina's laws can only apply to North Carolina lenders or those with sufficient contacts with the state of North Carolina. In effect, Plaintiffs want to create a system where North Carolina law applies to all lenders wherever located, regardless of competing state interests

27

and material contacts with North Carolina. That result even more clearly violates federal public policy and the Indian Commerce Clause.

Applying a different rule only to tribal lenders would upset the strong federal policy promoting tribal economic development. *See, e.g.*, *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334-35 n.17 (1983). The Supreme Court has long recognized that Congress has established an "overriding" federal policy "of encouraging tribal self-government and economic development.'" *See, e.g.*, *Montana v. Crow Tribe of Indians*, 523 U.S. 696, 709 (1998); *White Mountain Apache Tribe*, 448 U.S. at 143 (observing that "this tradition is reflected and encouraged in a number of congressional enactments demonstrating a firm federal policy of promoting tribal self-sufficiency and economic development.")). Indeed, "the underlying policies of tribal sovereign immunity . . . include tribal self-governance and tribal economic development as well as protection of 'the tribe's monies' and the 'promotion of commercial dealings between Indians and non-Indians.'" *Big Picture Loans*, 929 F.3d at 185 (citing *Breakthrough*, 629 F.3d at 1187-88).

Plaintiffs' Complaint undermines this cornerstone of federal Indian law and policy. Applying North Carolina law to the loans issued by BlueChip "would effectively nullify" the Tribe's "unquestioned authority to regulate the use of its resources by members and nonmembers, interfere with the

28

comprehensive tribal regulatory scheme, and threaten Congress' firm commitment to the encouragement of tribal self-sufficiency and economic development." *See, e.g., New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 344 (1983).

Furthermore, federal preemption principles preclude state regulation that interferes with tribal revenues and economic self-sufficiency/development. *See, e.g., Eastern Band of Cherokee Indians v. North Carolina Wildlife Resources Commission*, 588 F.2d 75 (4th Cir. 1978). Indeed, "state regulatory laws," which would include loan interest rate caps, "may apply to tribal regulations *unless* their application would frustrate tribal self-government or impair a right granted or reserved by federal law." *Eastern Band*, 588 F.2d at 78 (collecting cases) (emphasis added). In *Eastern Band*, the Fourth Circuit reasoned that "the state's regulation frustrates and impedes one major goal of tribal self-government, financial self-sufficiency. . . Imposition of North Carolina's license requirement would impair the Band's attempts to manage its own affairs by curbing its revenues and reducing the receipts of many of its members doing business with tourists." *Id.* And "[p]reemption, 'standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members.'" *Eastern Band of Cherokee Indians v. Lynch*, 632 F.2d 373, 381 (4th Cir. 1980) (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980)).

29

So too here: Plaintiffs' claims are preempted by federal law and policy protecting the Tribe's right to self-sufficiency and economic development. Even "[a]bsent . . . strong federal policies indicating a desire to exclude state regulation," such as the federal policy protecting the Tribe's sovereign right to self-sufficiency and economic development, "inquiry should be directed to the right of reservation Indians to make their own laws and to govern themselves. State action which substantially impinges on that right is impermissible." *Eastern Band*, 588 F.2d 77 (citing *Williams v. Lee*, 358 U.S. 217, 220 (1959)).

BlueChip provides crucial resources to the Tribe's community and members and thereby supports the Tribe's fundamental right to self-sufficiency and economic development. Plaintiffs cannot be allowed to infringe on that sovereign right and thereby harm the Tribe and its future— *especially* when they have not named either the Tribe or BlueChip as Defendants.

Finally, the Complaint violates public policy encouraging freedom to contract. *See, e.g., Baltimore & O. S. W. ry. Co. v. Voigt*, 176 U.S. 498, 505 (1900) ("[I]t must not be forgotten that the right of private contract is no small part of the liberty of the citizen" and it is the "usual and most important function of courts of justice" to "maintain and enforce contracts [rather] than to enable parties thereto to escape from their obligation on the pretext of public policy . . . .") (cleaned up). And because the term "public policy" is vague, "there must be

30

found definite indications in the law of the sovereignty to justify a [federal court's] invalidation of a contract as contrary to that policy." *Severn Peanut Co., Inc. v. Industrial Fumigant Co.*, 807 F.3d 88, 93 (4th Cir. 2015) (referencing *Muschany v. United States*, 324 U.S. 49, 66 (1945)). Otherwise, there would "be no limit to the contracts we might find policy reasons to invalidate." *Id.*

Each Plaintiff agreed to the application of Tribal law rather than North Carolina law. Had any of the Plaintiffs wanted to take out a loan from a North Carolina lender, they could have done so. But they chose not to do so—instead, they chose to do business with BlueChip under Tribal law.

North Carolina's public policy on usury limits does not outweigh the Tribe's interest in regulating loans issued under Tribal law by a Tribal entity. It also does not outweigh the strong federal policies in favor of a uniform system of credit, tribal economic development and self-sufficiency, and freedom of contract.

These policy limitations apply with particular force to Count III. Unjust enrichment must be wrongful or unjust. Aside from the fact that state law does not apply to the Plaintiffs' loans, for the policy reasons described in this section it is not unjust to permit the Tribe to engage in the lending business free from the restrictions of multiple and varying state laws.

31

### E. Plaintiffs cannot obtain a declaratory judgment without an underlying claim conferring jurisdiction.

The Declaratory Judgment Act "provides a remedy in cases otherwise in the Court's jurisdiction; it does not create an independent cause of action." *Electric Motor & Contracting Co., Inc. v. Travelers Indemnity Co. of Am.*, 235 F. Supp. 3d. 781, 793 (E.D. Va. 2017); *see also Indian Harbor Ins. Co. v. French*, 555 F. Supp. 3d 273, 276 (E.D. Va. 2021) (noting that the Declaratory Judgment Act is not an independent source of federal jurisdiction). Without an independent claim to confer federal jurisdiction, the Court cannot issue a declaratory judgment.

### F. The Complaint is based on conclusory, conjectural, speculative, and irrelevant statements.

Finally, the Court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) because Plaintiffs rely on statements that are conclusory, speculative, and simply do not relate to BlueChip or the Tribe. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). But "naked assertions" of wrongdoing require "factual enhancement" to cross "the line between possibility and plausibility of entitlement to relief," and "must contain more than labels and conclusions," such that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

32

assumption of truth." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Twombly,* 550 U.S. at557 and *Iqbal*, 556 U.S. at 679 ). Conclusory allegations based on information and belief "are no substitute for plausible factual allegations that wrongdoing has occurred." *Exela Pharma Sciences, LLC v. Sandoz, Inc.*, 486 F. Supp. 3d 1001, 1007 n.2 (W.D.N.C. 2020) (citing *Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009)).

Many of the allegations in the Complaint are conclusory and provided "upon information and belief." *See, e.g.*, Compl. ¶¶ 7, 9, 19-31, 65, 73, 93-96, 97, 101, 104-113, 116, 120-122, 128-129, 135-136, 138-139, 147-52, 154, 156-58, 165-66, 167-168, 179, 187, 189-191, and 204-205. The Court should ignore these paragraphs for purposes of determining whether Plaintiffs have stated a claim.

Many of Plaintiffs' other allegations refer to other lending entities or tribes without any evidence to connect these allegations to the Tribe, BlueChip, or Mikinok. Allegations about Rob Rosette, Matt Martorello, SourcePoint, the Lac Vieux Desert Band, or the Habematolel Pomo of Upper Lake (*see, e.g.*, Compl. ¶¶ 76-89) do not tend to establish anything about the Tribe or BlueChip. Confirming this point, many of the exhibits to the Complaint concern non-parties and facts not at issue in this case. (*See* Compl. Exs. 1-6 (all relating to other tribes and lenders)). These do not concern BlueChip, much less the named Tribal Defendants. Plaintiffs cannot state a claim based on speculation that the Tribe

33

must operate in a similar way to other lenders simply because it also engages in the lending business.

These allegations fall short of establishing a plausible claim to relief against the Tribe or BlueChip, let alone against the named Tribal Defendants. The Court should dismiss the Complaint under Rule 12(b)(6).

<div align="center"><u>**CONCLUSION**</u></div>

For the foregoing reasons, the Tribal Defendants request that the Court grant their motion to dismiss.

<div align="center">34</div>

Dated: January 19, 2026 By: */s/* Alex J. Hagan

**ELLIS & WINTERS LLP**
Alex J. Hagan
N.C. Bar No. 19037
Thomas H. Segars
N.C. Bar No. 29433
Tyler Jameson
N.C. Bar No. 59348
Post Office Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010
alex.hagan@elliswinters.com
tom.segars@elliswinters.com
ty.jameson@elliswinters.com


Brendan V. Johnson*
Timothy Billion*
Navy Thompson*
Samuel Black*
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-339-4181
Facsimile: 612-339-4181
bjohnson@RobinsKaplan.com
tbillion@RobinsKaplan.com
nthompson@RobinsKaplan.com
sblack@RobinsKaplan.com


*\* Notice of Special Appearance forthcoming*

***Attorneys for Tribal Defendants***

35

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATION</u>

Pursuant to Local Rule 7.3(d)(1), and as extended by the Court's Text Order dated December 18, 2025, the undersigned hereby certifies that the foregoing brief contains fewer than 7,500 words, exclusive of the elements to be omitted from the word count. Specifically, the foregoing contains approximately 7,466 words, as reported by the undersigned's word processing software.

<div style="margin-left: 2em;">

/s/ Alex J. Hagan
Alex J. Hagan

</div>