# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL GOETTING, KIMBERLY
WEBB, TERRI EDGELL, and
KIMBERLY CHILDS, *on behalf of
themselves and all individuals similarly
situated*,

        Plaintiffs,

    v.

SAMUEL ADRIAN SPRATT, RCOFIII
SPEC-FIN CREDIT 1, LLC, R&R SPE
LLC, JAMIE AZURE, CRAIG
LUNDAY, KENNY MALATERRE,
JON JON KEPLIN, RON TROTTIER
SR., ELMER DAVIS JR., LYNN
GORNEAU, CHAD COUNTS,
BLAINE DAVIS, and JOHN DOES
Nos. 1-15,

        Defendants.

Case No. 1:25-cv-00794-WO-JLW

## MEMORANDUM OF LAW IN SUPPORT OF TRIBAL DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION

# TABLE OF CONTENTS

NATURE OF THE MATTER..............................................................................................1

FACTUAL BACKGROUND ...........................................................................................1

QUESTION PRESENTED................................................................................................2

ARGUMENT ....................................................................................................................3

     I.     The arbitration agreements are enforceable ...........................................4

     II.    The arbitration agreements do not prospectively waive Plaintiffs'
          rights under federal law ...........................................................................7

          A.    Tribal and federal law govern the loan agreements, which do
                not implicate the prospective waiver doctrine ...........................8

          B.    The designation of Tribal law rather than state law does not
                violate the prospective wavier doctrine.....................................11

          C.    Any challenge to the choice-of-law provisions is for the
                arbitrator—and not the Court—to decide. ................................13

     III.   The Court should compel individual arbitration ................................14

     IV.   The Tribal Defendants may compel arbitration...................................15

CONCLUSION................................................................................................................17

CERTIFICATE OF COMPLIANCE ..............................................................................19

Case 1:25-cv-00794-DAB-JGM   Document 29   Filed 01/19/26   Page 2 of 23

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ............................................................. 8

*Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623 (4th Cir. 2006)................................. 16

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ................................................. 8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......................................... 3, 14

*Ayala v. BlueChip*, 8:25-cv-00916-FWS-KES (C.D. Cal. Oct. 14, 2025) (Ex. A) ........ 6

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392 (4th Cir. 2005) .............................. 16

*Bridges v. Raines*, No. 1:24-CV-00087-MR-WCM,
    2025 WL 3565343 (W.D.N.C. Dec. 10, 2025)........................................... 9, 10, 11

*Danny K. v. Experian Info. Sols., Inc.*, No. 1:23CV856,
    2025 WL 2663011 (M.D.N.C. Sept. 17, 2025) ..................................................... 5

*DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797 (N.C. App. 2001))................... 15

*Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017)........................... 12, 13

*Edwards v. CSX Transportation, Inc.*, 983 F.3d 112 (4th Cir. 2020) ........................... 15

*Gibbs v. Haynes Investments, LLC*, 967 F.3d 332 (4th Cir. 2020) ............................... 12

*Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020)..................... 12

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ......................................... 8

*Glass v. Kidder Peabody & Co.*, 114 F.3d 446 (4th Cir. 1997)......................................... 4

*Hayes v. Delbert Servs. Corp.*, 811 F.3d 666 (4th Cir. 2016) .............................. 9, 10, 12

*Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021) .................................................... 9, 10, 12

ii

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) ........................................ 3

*Johnson v. Opportunity Fin., LLC*, No. 3:22CV190,
2023 WL 2636712 (E.D. Va. Mar. 24, 2023) ...................................................... 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) ........... 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................... 4

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ........................... 15

*Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824 (S.D. Ind. 2024) ........................ 11

*Whiteside v. Teltech Corp.*, 940 F.2d 99 (4th Cir. 1991) .................................................. 5

*Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023) ...................................................... 12

*Wood v. W6LS, Inc.*, No. 4:24-cv-128-DJH (W.D. Ky. Sept. 30, 2025) (Ex. B) .......... 10

STATUTES, GUIDELINES

Federal Arbitration Act, 9 U.S.C. § 1-16 ..........................................................*in passim*

## NATURE OF THE MATTER

Each Plaintiff agreed to pursue any claims related to the loans at issue through binding individual arbitration—not a class action. Sam Spratt, Jamie Azure, Craig Lunday, Kenny Malaterre, Jon Jon Keplin, Ron Trottier Sr., Elmer Davis Jr., Lynn Gourneau, Chad Counts, and Blaine Davis (collectively, the "Tribal Defendants") request that the Court compel individual arbitration of Plaintiffs' claims against BlueChip Financial d/b/a Spotloan ("BlueChip").

The Plaintiffs are consumers who entered into one or more loan agreements with BlueChip. In their loan agreements, each Plaintiff agreed to (1) arbitration in the event of a dispute arising out of the loan agreement or any dealings with BlueChip, and (2) waive their right to pursue claims related to the loan through a class-action lawsuit.

Despite consenting to the above terms, Plaintiffs filed the Complaint doing exactly what they agreed not to do: bring a class-action lawsuit relating to their loans from BlueChip. The Court should enforce the arbitration agreements by compelling individual arbitration against BlueChip, not the Tribal Defendants named here.

## FACTUAL BACKGROUND

BlueChip is a wholly owned economic arm of The Turtle Mountain Band of Chippewa Indians ("Tribe"). (Spratt Decl. ¶3.) The Tribe is a federally

1

recognized Indian tribe with headquarters on the Turtle Mountain Indian Reservation in North Dakota. (*Id*.) BlueChip is licensed by the Tribe's Lending Regulatory Commission pursuant to the Tribe's Lending Code. (*Id*.)

When Plaintiffs accepted loans from BlueChip, each signed loan agreements that governed the terms of their loans. *(Id*. at Exs. A-D (collectively, the "Loan Agreements").)[1]

Each Loan Agreement contains an "Individual Arbitration Agreement and Class Action Waiver." (Loan Agreements at 5-8.) Consumers can opt out of the arbitration agreement by notifying BlueChip of their intent to do so, in writing, within 60 days of signing a loan agreement. (*Id*. at 8.) None of the named Plaintiffs opted out of the arbitration agreement. (Spratt Decl. ¶8.)

Jamie Azure is the Tribe's elected chairman. (*Id*. ¶3.) Craig Lunday, Kenny Malaterre, Jon Jon Keplin, Ron Trottier Sr., Elmer Davis Jr., Lynn Gorneau, Chad Counts, and Blaine Davis are the elected members of the Tribal Council. (*Id*.)

## QUESTION PRESENTED

1. The Plaintiffs' loan agreements each contained an arbitration agreement. Must the Plaintiffs pursue their claims in individual arbitration?

_____

[1] This motion attaches only the most recent loan agreement for each Plaintiff. The arbitration provisions in BlueChip's loan agreements have been identical to these loan agreements for at least the past four years, and any claim purportedly based on an older loan agreement would be barred by the statute of limitations.

2

## ARGUMENT

Plaintiffs each consented to valid and enforceable arbitration agreements when they signed the Loan Agreements. The claims Plaintiffs bring in this lawsuit are arbitrable against BlueChip and must be decided by an arbitrator in accordance with the Federal Arbitration Act.

Each of the loan agreements invokes the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). (Loan Agreements at 6.) The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. This provision reflects a "liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotations omitted). A court "must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id.* (internal citations omitted).

To evaluate a motion to compel arbitration, courts "engage in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal quotations and citations omitted). If a court

3

"determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997) (quotation and citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

The claims brought by Plaintiffs are arbitrable. Plaintiffs signed valid arbitration agreements with BlueChip. The arbitration agreements did not prospectively waive Plaintiffs' rights under federal law. Plaintiffs consented to individual arbitration and agreed not to pursue class actions. And here, the Tribal Defendants may invoke the arbitration agreements to compel Plaintiffs to arbitrate against BlueChip.

## I.       The arbitration agreements are enforceable.

The arbitration agreements are clear and unambiguous. The Court should enforce them because Plaintiffs consented to them, Plaintiffs acknowledge they exist, and they are valid under criteria set by the Fourth Circuit.

The loan agreements' express language establishes agreements to arbitrate. The language begins with a bolded and underlined header stating:

4

"INDIVIDUAL ARBITRATION AGREEMENT AND CLASS ACTION

WAIVER." (Loan Agreements at 5.) The arbitration agreements then state:

"Unless prohibited by federal law, you and we agree to arbitrate all Claims

through BINDING INDIVIDUAL ARBITRATION, as explained below. 'Claims'

include all claims and disputes regarding this Loan Agreement and/or any of

our past, present, or future dealings with each other." (*Id.*) The agreements

explain the arbitration terms in a reader-friendly table with a question-and-

answer format. (*Id.* at 5-8.) Plaintiffs each consented to these terms when they

signed their loan agreements. (*Id.*)

Courts in the Fourth Circuit determine whether an arbitration agreement is

valid under the FAA by evaluating whether the party seeking to compel

arbitration has demonstrated the following: (1) the existence of a dispute

between the parties; (2) a written agreement that includes an arbitration

provision which purports to cover the dispute; (3) the relationship of the

transaction, which is evidenced by the agreement, to interstate or foreign

commerce; and (4) the failure, neglect or refusal of the defendant to arbitrate the

dispute. *Danny K. v. Experian Info. Sols., Inc.*, No. 1:23CV856, 2025 WL 2663011, at

*3 (M.D.N.C. Sept. 17, 2025) (citing *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th

Cir. 1991)).

A federal court in California recently compelled arbitration in BlueChip's favor in a lawsuit brought by a consumer. *Ayala v. BlueChip*, 8:25-cv-00916-FWS-KES (C.D. Cal. Oct. 14, 2025) (attached as **Exhibit A** hereto.) Similarly, this case satisfies each element. This lawsuit initiated by Plaintiffs proves that a dispute exists between Plaintiffs and BlueChip (although it is incorrectly brought against the Tribal Defendants because BlueChip only waived immunity for arbitration, not for this suit), satisfying the first element.

The loan agreements signed by Plaintiffs establish the second element's written agreement requirement because they include the four-page arbitration agreement that covers the claims and parties in this dispute. (Loan Agreements at 5-8.) Covered claims "include all claims and disputes regarding this Loan Agreement and/or any of our past, present, or future dealings with each other." (*Id.* at 6) All claims Plaintiffs raise in their Complaint constitute a dispute "regarding this Loan Agreement," given that they allege violations of federal and state law stemming from the loans Plaintiffs received from BlueChip through the loan agreements. (Compl. ¶¶ 140-221.) The arbitration agreements also cover the Tribal Defendants, given that they cover "all parties involved in any Claims, such as heirs, successors, assigns, employees, agents, vendors, and other third parties." (Loan Agreements at 5.)

The transaction involves interstate commerce, meeting the third element, because the named Plaintiffs live in North Carolina, Indiana, and Georgia, and they received loans from BlueChip, which is based on the Turtle Mountain Indian Reservation in North Dakota. (Compl. at ¶¶ 15-18.) Each arbitration agreement also states that it "involves interstate commerce." (Loan Agreements at 6.)

Lastly, the fourth element is met because Plaintiffs brought this lawsuit instead of filing an arbitration demand as required by the Loan Agreements. The Tribal Defendants have satisfied their burden to demonstrate each element proving the agreements' validity.

## II.    The arbitration agreements do not prospectively waive Plaintiffs' rights under federal law.

Plaintiffs incorrectly assert in their Complaint that the choice-of-law provisions in the loan agreements violate the prospective waiver doctrine. (Compl. ¶ 128.) That position contradicts Fourth Circuit case law and recent decisions in similar tribal lending cases, including one decided by another federal court in North Carolina in December 2025. The choice-of-law provisions in the loan agreements include Tribal and federal law. These terms do not impermissibly waive Plaintiffs' rights or otherwise invalidate the arbitration agreements.

The Supreme Court described the prospective waiver doctrine in dicta in a footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, stating, "[I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." 473 U.S. 614, 637 n.19 (1985). The Supreme Court has addressed the prospective waiver doctrine on three other occasions and each time "declined to apply it to invalidate the arbitration agreement at issue." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235-36 (2013) (citing *Mitsubishi*, 473 U.S. at 637 n.19; *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).

A. **Tribal and federal law govern the loan agreements, which do not implicate the prospective waiver doctrine.**

Plaintiffs did not waive their rights and remedies under federal law when they entered into the loan agreements. Plaintiffs expressly agreed that the law of the Tribe and federal law govern the loan agreements and any related disputes. The choice-of-law clauses are substantively similar to the provisions analyzed in a recent tribal lending case in which another North Carolina federal court granted a motion to compel arbitration. The Court should do the same here.

On December 10, 2025, the U.S. District Court for the Western District of North Carolina granted a motion to compel arbitration sought by defendants

8

associated with a tribal lender in *Bridges v. Raines*—a class action brought by consumers who had signed loan agreements containing arbitration provisions. No. 1:24-CV-00087-MR-WCM, 2025 WL 3565343 (W.D.N.C. Dec. 10, 2025). The court noted that in other tribal lending cases, the Fourth Circuit has held that arbitration agreements purporting to exclude the application of federal law are unenforceable as a prospective waiver of federal rights. *Id.* at *4 (citing *Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021)). But the Supreme Court "has repeatedly upheld arbitration agreements that give an arbitrator authority to arbitrate federal statutory rights." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674 (4th Cir. 2016).

The choice-of-law clauses in *Bridges* stated that the arbitration provisions at issue were "governed by Tribal Law, the Federal Arbitration Act ('FAA'), decisions of the United States Supreme Court interpreting the FAA, and other applicable federal law without regard to the laws of any state, including the conflict of laws rules of any state," and that "Oglala Sioux tribal law, and Applicable Federal Law" would "govern the loan Agreement, the Arbitration Agreement and all Claims." 2025 WL 3565343, at *4. The court compelled arbitration, finding that the provisions "do not, either explicitly or implicitly, operate to prospectively waive the Plaintiffs' federal statutory rights." *Id.*

9

Another federal court reached the same conclusion in September 2025 in a similar case, compelling arbitration in a class action brought by consumers against a tribal lender where the loan agreements stated that tribal and federal law governed. *Wood v. W6LS, Inc.*, No. 4:24-cv-128-DJH (W.D. Ky. Sept. 30, 2025) (unpublished) (attached as **Exhibit B** hereto). The combination of tribal choice of law and the applicability of federal law differed from Fourth Circuit precedents that "claimed to waive the application of both state and federal law" and was "therefore distinguishable." *Id.* at 6 n.4 (comparing the case to *Hayes* and *Hengle*).

The choice-of-law provisions here are substantively similar to *Bridges* and *Wood* because they do not prospectively waive Plaintiffs' federal statutory rights. The relevant provisions read:

> Governing Law. By signing this Loan Agreement, you acknowledge and agree that this Loan Agreement, your loan with us, and any and all aspects of our relationship, including all claims or causes of action (whether in contract, tort, equity, statute, or otherwise) **shall be subject to, governed by, and enforced in accordance with the laws of the Tribe and U.S. federal law.** This includes, among other things, **tribal and federal laws** concerning the marketing, underwriting, funding, servicing, and collection of your loan. . . . . You acknowledge and agree that the laws of the Tribe will apply rather than the laws of your state or any other state. **Neither this Governing Law provision nor any other provision of this Loan Agreement shall be construed to waive any of your rights under U.S. federal law or shall prevent you from bringing any individual Claim against us under U.S. federal law**, subject to the Arbitration Agreement's prohibition of class actions, class arbitration, and injunctive relief in favor of non-parties.

(Loan Agreements at 4–5 (emphasis changed from original).) The arbitration agreements later state that they "shall be governed by the Federal Arbitration Act . . . ." (*Id.* at 6.)

Like the provisions in *Bridges*, the provisions here expressly state that Tribal law, federal law, and the FAA apply to govern the agreements and any disputes, while state law does not apply. These agreements go even further than in *Bridges* to inform consumers that they have not waived their federal rights, stating, "Neither this Governing Law provision nor any other provision of this Loan Agreement shall be construed to waive any of your rights under U.S. federal law or shall prevent you from bringing any individual Claim against us under U.S. federal law." Accordingly, the Loan Agreements do not prospectively waive Plaintiffs' federal statutory rights.

## B. The designation of Tribal law rather than state law does not violate the prospective waiver doctrine.

The Loan Agreements' disclaimer of state law does not violate the prospective waiver doctrine. The Fourth Circuit has never extended the doctrine to apply to only state law. Instead, the prospective waiver doctrine applies only where federal law is disclaimed.

An arbitration agreement that disclaims state law is enforceable, so long as it does not prospectively waive federal rights. *See Bridges*, 2025 WL 3565343, at *5; *Walton v. Uprova Credit LLC*, 722 F. Supp. 3d 824, 836 (S.D. Ind. 2024) (stating that

11

"we ultimately remain unpersuaded that the prospective waiver doctrine was intended to preserve state statutory rights"). The Fourth Circuit has never extended the doctrine to cover a party's waiver of state rights, despite ample opportunity in six tribal lending appeals to analyze the prospective waiver issue. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666 (4th Cir. 2016); *Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330 (4th Cir. 2017); *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332 (4th Cir. 2020) ("*Gibbs I*"); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ("*Gibbs II*"); *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021); *Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023); *see also Johnson v. Opportunity Fin., LLC*, No. 3:22CV190, 2023 WL 2636712, at *6 (E.D. Va. Mar. 24, 2023). The *Johnson* court in yet another tribal lending dispute analyzed *Gibbs I*, *Gibbs II*, and *Hengle*, each of which involved choice-of-law provisions that disclaimed federal law, concluding that they "further reinforce that the prospective waiver doctrine only applies to the waiver of federal, not state, statutory rights." 2023 WL 2636712, at *6.

Here, the disclaimer of state law in the choice-of-law provisions presents no barrier to enforcing the arbitration agreement. The choice-of-law provisions in *Bridges* likewise disclaimed state law, and the court compelled arbitration. *Bridges*, 2025 WL 3565343, at *1 (quoting the loan agreement, which stated that the arbitration provisions were governed "without regard to the laws of any

12

state"). The court reasoned that parties "agreeing to arbitrate under the FAA could choose the law of North Carolina, North Dakota, or the tribal law of a federally recognized Indian tribe, so long as there is no explicit or implicit preclusion of other federal statutory rights." *Id.* at *5. The Plaintiffs here similarly agreed that the law of the Tribe and federal law would govern the loan agreements and any related disputes. Their consent disclaims only state law, not federal law; therefore, the prospective waiver doctrine does not apply and does not stand in the way of arbitration. Any holding to the contrary would invalidate any arbitration provision with a choice of law clause where the chosen law varied in any material respect from a different state's law—which is precisely why choice of law clauses exist.

### C. Any challenge to the choice-of-law provisions is for the arbitrator—and not the Court—to decide.

Any potential challenge to the choice-of-law provisions should be presented to the arbitrator, not a court. If a court finds "uncertainty" surrounding whether a choice-of-law provision precludes federal substantive statutory remedies, "the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies." *Dillon*, 856 F.3d at 224. The prospective waiver issue is not ripe for a court to consider until a party asks the court to enforce the arbitrator's decision. *Id.* That approach is consistent with the language of the arbitration agreements. The agreements

13

provide that the arbitrator may decide "whether the Governing Law provision in the Loan Agreement is enforceable." (Loan Agreements at 6.)

The Court should compel arbitration because the choice-of-law provisions do not prospectively waive Plaintiffs' rights under federal law, and the enforceability of the choice of law provisions is for an arbitrator to decide.

## III. The Court should compel individual arbitration.

Tribal Defendants seek to compel *individual* arbitration, to which Plaintiffs consented when they signed the loan agreements. The relevant terms state:

> You and we each understand and agree that by requiring each other to resolve all disputes through individual arbitration, WE ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ALL DISPUTES SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS, AND NOT AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING. The arbitrator(s) may not consolidate the claims of multiple parties unless all parties, including us, agree in writing.

(Loan Agreements at 6.) These terms bind Plaintiffs to individual arbitration unless all parties agree in writing to consolidate their claims. The parties have not agreed to do so.

Courts routinely decline to compel class arbitration. For example, the Supreme Court in *AT&T Mobility LLC* held that the FAA preempted a state judicial rule prohibiting enforcement of class arbitration waivers. 563 U.S. at 344, 352 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with

14

the FAA."). A party cannot be compelled to class arbitration under the FAA "unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original).

Here, the parties agreed to individual arbitration when Plaintiffs signed their loan agreements. The Court should compel individual arbitration.

## IV. The Tribal Defendants may compel arbitration.

Although the Tribal Defendants are nonsignatories to the arbitration agreements in the Loan Agreements, they may nonetheless compel Plaintiffs to arbitrate their claims against BlueChip.

The Loan Agreements themselves require arbitration against BlueChip. Here, the Tribal Defendants fall under the arbitration agreements as an employee and the elected representatives of the owner of BlueChip. At a minimum, they are intended third-party beneficiaries of the arbitration agreements and can enforce the arbitration agreements because the circumstances indicate that they are part of the class of people the arbitration agreements intended to cover. *See Edwards v. CSX Transportation, Inc.*, 983 F.3d 112, 117 (4th Cir. 2020) (quoting *DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 801 (N.C. App. 2001)).

Independently, the Tribal Defendants may compel arbitration under the doctrine of equitable estoppel. In the Fourth Circuit, it is "well-established" that

a nonsignatory may "compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). "[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Id.* (quoting *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005)).

Here, Plaintiffs "rely on" the terms of the loan agreements in asserting the claims in their Complaint. Each claim "makes reference to" and "presumes the existence of" the loan agreements because each expressly states that "[c]ommon questions of law and fact" include "whether the choice-of-law provision used in their loan agreements and selecting the tribal law are enforceable." (Compl. ¶¶ 143, 162, 175, 184, 196, 212.) Further, the claims stem directly from Plaintiffs' Loan Agreements and are premised on the interest rate contained in the Loan Agreements. Because Plaintiffs must rely on the terms of the Loan Agreements, the claims meet the standard set forth in *Am. Bankers Ins. Grp.* in that they "arise

out of and relate directly to the written agreement." Tribal Defendants may therefore invoke the agreements to compel arbitration.

To be clear, Plaintiffs must arbitrate their claims against BlueChip, not against the Tribal Defendants. That is consistent with the reality that BlueChip—not the Tribal Defendants—is the lender in the Loan Agreements. And BlueChip waived its sovereign immunity for individual arbitration with each Plaintiff, so the Plaintiffs need not name the Tribal Defendants to circumvent sovereign immunity as they attempt to do in this lawsuit.

## CONCLUSION

For the foregoing reasons, the Court should grant Tribal Defendants' Motion to Compel Individual Arbitration.

Dated:        January 19, 2026        By: /s/  Alex J. Hagan

**ELLIS & WINTERS LLP**
Alex J. Hagan
N.C. Bar No. 19037
Thomas H. Segars
N.C. Bar No. 29433
Tyler Jameson
N.C. Bar No. 59348
Post Office Box 33550
Raleigh, NC 27636
Tel: (919) 865-7000
Fax: (919) 865-7010
alex.hagan@elliswinters.com
tom.segars@elliswinters.com
ty.jameson@elliswinters.com

17

Brendan V. Johnson*
Timothy Billion*
Navy Thompson*
Samuel Black*
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612-339-4181
Facsimile: 612-339-4181
bjohnson@RobinsKaplan.com
tbillion@RobinsKaplan.com
nthompson@RobinsKaplan.com
sblack@RobinsKaplan.com

*\* Notice of Special Appearance forthcoming*

***Attorneys for Tribal Defendants***

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

Pursuant to Local Rule 7.3(d)(1), the undersigned hereby certifies that the foregoing brief contains fewer than 6,250 words, exclusive of the elements to be omitted from the word count. Specifically, the foregoing contains approximately 3,680 words, as reported by the undersigned's word processing software.

This the 19th day of January, 2026.

<u>/s/ Alex J. Hagan</u>
Alex J. Hagan

96780173.1