# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### 1:25-cv-00794-WO-JLW

| | |
|---|---|
| MICHAEL GOETTING, KIMBERLY WEBB, TERRI EDGELL, and KIMBERLY CHILDS, on behalf of themselves and all individuals similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>SAMUEL ADRIAN SPRATT, RCOFIII SPEC-FIN CREDIT 1, LLC, R&R SPE LLC, JAMIE AZURE, CRAIG LUNDAY, KENNY MALATERRE, JON JON KEPLIN, RON TROTTIER SR., ELMER DAVIS JR., LYNN GOURNEAU, CHAD COUNTS, BLAINE DAVIS, and JOHN DOES Nos. 1-15,<br><br>       Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT............................................................................................................................4

I.    The Court does not have personal jurisdiction over the Companies........................4

    A.    The Companies are not subject to specific personal jurisdiction in North Carolina ................................................................................................................6

    B.    RICO does not provide a statutory basis for jurisdiction over the Companies ............................................................................................................9

II.    The Court should dismiss the Complaint because Plaintiffs failed to join the Tribe and Spotloan as defendants 12

    A.    Spotloan and the Tribe are required parties under Rule 19(a) ....................12

    B.    Neither Spotloan nor the Tribe can be joined due to their sovereign immunity ...............................................................................................................13

    C.    Spotloan and the Tribe are indispensable parties under Rule 19(b)............13

III.    Plaintiffs fail to state a claim upon which relief can be granted ...........................15

    A.    Legal Standard...............................................................................................15

    B.    Plaintiffs fail to state a claim under RICO Section 1962(c)........................16

        i.    Plaintiffs fail to allege a RICO enterprise .......................................16

        ii.    Plaintiffs fail to allege the Companies conducted or participated in the management of the alleged enterprise's affairs .........................17

        iii.    Plaintiffs fail to plausibly allege that their purported injuries were proximately caused by the Companies............................................20

    C.    Plaintiffs fail to state a claim under RICO Section 1962(d) .......................22

    D.    Plaintiffs fail to state a claim under the North Carolina Consumer Finance Act .................................................................................................................23

    E.    Plaintiffs fail to state a claim under the Georgia Payday Lending Act .......25

    F.    Plaintiffs fail to state a claim for unjust enrichment .................................25

    G.    Plaintiffs fail to state a claim for a declaratory judgment ..........................26

CONCLUSION .......................................................................................................................27

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Almanza v. United Airlines, Inc.*,
851 F.3d 1060 (11th Cir. 2017) ........................................................................................22

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ..........................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................15, 16, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................15, 16, 22

*Brown v. Walmart*,
No. 1:20CV59, 2022 WL 295708 (M.D.N.C. Feb. 1, 2022) ..................................................25

*Carias v. Harrison*,
No. 5:13-CT-3264-FL, 2016 WL 1171544 (E.D.N.C. Mar. 23, 2016), *aff'd*,
705 F. App'x 181 (4th Cir. 2017) .......................................................................................22

*Cook v. Howard*,
484 F. App'x 805 (4th Cir. 2012) .......................................................................................23

*Dixon v. Gatzke*,
790 F. Supp. 3d 679 (N.D. Ill. 2025) ...................................................................................9

*Doe 1 v. Varsity Brands, LLC*,
No. CV 6:22-2957-HMH, 2023 WL 4209799 (D.S.C. June 27, 2023) ...................................19

*Don't Look Media, LLC v. Fly Victor Ltd.*,
No. 19-61555-CIV, 2020 WL 7481448 (S.D. Fla. Feb. 5, 2020), aff'd, 999
F.3d 1284 (11th Cir. 2021) ...............................................................................................11

*Dongelewicz v. PNC Bank Nat'l. Ass'n.*,
104 F. App'x 811 (3d Cir. 2004) ..................................................................................19, 23

*DP Env't Servs., Inc. v. Bertlesen*,
834 F. Supp. 162 (M.D.N.C. 1993) .....................................................................................6

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...........................................................................................22

ii

*Ellis v. Louisiana-Pac. Corp.*,
  699 F.3d 778 (4th Cir. 2012) ........................................................................................26

*ESAB Grp., Inc. v. Centricut, Inc.*,
  126 F.3d 617 (4th Cir. 1997) ........................................................................................10

*Felts v. Reed*,
  No. 4:20-CV-00821 JAR, 2022 WL 2290450 (E.D. Mo. June 24, 2022) ..............................14

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ..........................................................................................7

*Francis v. Giacomelli*,
  588 F.3d 186 (4th Cir. 2009) ........................................................................................16

*GE Inv. Private Placement Partners II v. Parker*,
  247 F.3d 543 (4th Cir. 2001) ........................................................................................22

*Godfredson v. JBC Legal Grp., P.C.*,
  No. 5:04-CV-390-FL(1), 2005 WL 8159322 (E.D.N.C. July 13, 2005) ............................5, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).......................................................................................................5

*Gunvor SA v. Kayablian*,
  948 F.3d 214 (4th Cir. 2020) ....................................................................................12, 13

*Haynes v. James H. Carr, Inc.*,
  427 F.2d 700 (4th Cir. 1970) ..........................................................................................6

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010).........................................................................................................21

*HSBC Bank USA, Nat. Ass'n v. Resh*,
  No. 3:12-CV-00668, 2015 WL 4772524 (S.D.W. Va. Aug. 12, 2015)..............................6, 11

*Jackson v. Minnesota Life Ins. Co.*,
  275 F. Supp. 3d 712 (E.D.N.C. 2017)..............................................................................19

*Kirwin v. Marathon Moving Co., Inc.*,
  No. 1:23-CV-686, 2025 WL 2653162 (M.D.N.C. Sept. 16, 2025) ..................................16, 26

*LifeBrite Hosp. Grp. of Stokes, LLC v. Blue Cross & Blue Shield of N. Carolina*,
  No. 1:18CV293, 2022 WL 801646 (M.D.N.C. Mar. 16, 2022) ...........................................25

*Mobilization Funding, LLC v. Stokes*,
  No. 25-1050, 2025 WL 3749859 (4th Cir. Dec. 29, 2025)....................................................8

iii

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
130 F.4th 91 (4th Cir. 2025) ...............................................................................................18

*Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*,
615 F. Supp. 3d 379 (M.D.N.C. 2022) ...............................................................................18

*Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,
210 F.3d 246 (4th Cir. 2000) .......................................................................................12, 14

*Nevels v. Freemont Inv. & Loan*,
No. 1:11CV882, 2013 WL 12303948 (M.D.N.C. Mar. 30, 2013), *report and
recommendation adopted*, No. 1:11CV882, 2013 WL 12303947 (M.D.N.C.
Apr. 29, 2013) ....................................................................................................................21

*Palmer v. Nationwide Mut. Ins. Co.*,
945 F.2d 1371 (6th Cir. 1991) ............................................................................................21

*Renaissance Ctr. Venture v. Lozovoj*,
884 F. Supp. 1132 (E.D. Mich. 1995)..................................................................................20

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008).............................................................................................................13

*Reves v. Ernst & Young*,
507 U.S. 170 (1993)........................................................................................................17, 20

*Reynolds v. United States Gov't*,
No. 7:22-CV-00178-FL, 2023 WL 5826901 (E.D.N.C. July 21, 2023).......................... *passim*

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008) ............................................................................................8

*Rush v. Savchuk*,
444 U.S. 320 (1980).............................................................................................................11

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018) .........................................................................................20, 21

*Swaim v. Westchester Acad., Inc.*,
170 F. Supp. 2d 580 (M.D.N.C. 2001) .................................................................................19

*Tatoian v. Andrews*,
100 F. Supp. 3d 549 (W.D. Va. 2015) ...................................................................................9

*United States v. Griffin*,
660 F.2d 996 (4th Cir. 1991) ...............................................................................................17

iv

*United States v. Tillett*,
   763 F.2d 628 (4th Cir. 1985) ...............................................................................................16, 17

*Walden v. Fiore*,
   571 U.S. 277 (2014).........................................................................................................9

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012) ...........................................................................................22

*Williams v. Big Picture Loans*,
   LLC, 929 F.3d 170 (4th Cir. 2019).....................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(2)......................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 15

Fed. R. Civ. P. 12(b)(7)......................................................................................................1

Fed. R. Civ. P. 19(a) .........................................................................................................12

Fed. R. Civ. P. 19(b)(1)-(4)................................................................................................14

**Statutes**

18 U.S.C. § 1962(c) ...........................................................................................................17

18 U.S.C. § 1965................................................................................................................9

28 U.S.C. § 1367(c)(3).......................................................................................................25

Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(b)(7), Defendants RCOFIII Spec-Fin Credit 1 LLC ("RCOF") and R&R SPE LLC ("R&R") (collectively, the "Companies") hereby submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Class Action Complaint.

## **INTRODUCTION**

This lawsuit consists of nothing more than Plaintiffs dressing up unsupported state law usury claims as federal racketeering claims. Plaintiffs allege that between 2015 and 2024, they took out loans from non-party lender BlueChip Financial d/b/a Spotloan ("Spotloan"), which they applied for and obtained via Spoatloan's website. Plaintiffs now seek to invalidate their loan agreements as "null and void" because Spotloan's lending operations allegedly violated North Carolina and Georgia usury law. But Plaintiffs do not seek relief against Spotloan, the entity that issued and collected on those loans, or the Turtle Mountain Band of Chippewa Indians (the "Tribe"), which created, owns, and controls Spotloan. Instead, Plaintiffs ask the Court to hale a dozen non-resident Defendants into North Carolina on unsupported allegations that they were the true forces behind Spotloan's lending operations.

The Court should dismiss the Complaint for three reasons. *First*, the Court lacks personal jurisdiction over the Companies, two Delaware LLCs with their principal places of business in South Carolina and Texas. *Second*, Plaintiffs fail to join indispensable parties to this action—Spotloan and the Tribe—which will prejudice those entities, as well as the Companies and Plaintiffs themselves.

1

*Finally*, Plaintiffs fail to allege sufficient factual matter to sustain any of their claims. The Companies merely provided a line of credit to Spotloan as part of the Companies' ordinary course of business as a creditor to other businesses. Nothing more. The Companies' lack of involvement is evidenced by the fact that only six of the 221 paragraphs in the Complaint mention either RCOF or R&R, and the handful of paragraphs that do consist of nothing more than conclusory and highly speculative allegations pled largely "upon information and belief," rather than on facts known by Plaintiffs.

## STATEMENT OF FACTS

Plaintiffs allege that between 2015 and 2024, they applied for and obtained loans at unlawful interest rates from Spotloan, a lender that operates completely online. (Compl. ¶¶ 108, 131-34.) Spotloan, who is not a party to this lawsuit, is "owned by Ningo Lending LLC . . ., a tribal limited liability company formed under the laws of and wholly owned by the Turtle Mountain Band of Chippewa Indians of North Dakota, a federally recognized Indian tribe (the "Tribe")." SPOTLOAN, https://www.spotloan.com/ (last visited Jan 7. 2026). Mikinok Enterprises "owns and operates Spotloan." (Compl. ¶ 19.) Plaintiffs allege that "[a]lthough holding itself out as an entity wholly owned and operated by the Tribe, Spotloan is in fact funded, managed and operated by Defendants Spratt, [RCOF], and [R&R]." (*Id.* ¶ 7.) Accordingly, they attribute Spotloan's allegedly unlawful lending practices to Defendant Spratt and the Companies (collectively, the "Non-Tribal

2

Defendants"), and to nine members of the Tribe's Council, "without whose approval and legal sanction Spotloan could not operate." (*Id.* ¶ 120.)

Plaintiffs allege that "the Non-Tribal Defendants, including the deliberately concealed John Doe Defendants, have entered into agreements with the Tribe, the Tribal Council Defendants, Spotloan, and the Tribe's economic development corporation and others to make and collect on usurious loans." (*Id.* ¶ 107.) Plaintiffs' Complaint alleges against the Companies violations of (i) RICO Section 1962(c), (ii) RICO Section 1962(d), (iii) the North Carolina Consumer Finance Act, and (iv) the Georgia Payday Lending Act, and asserts claims for (v) unjust enrichment and (vi) a declaratory judgment.

Only six paragraphs in the Complaint mention either RCOF or R&R. Those paragraphs allege, without support, that the Companies participated in Spotloan's lending operation and "are in turn the funders and operators of Spotloan's lending operation and derive nearly all of the profits from the scheme." (Compl. ¶ 7; *see also* ¶¶ 20, 21, 106, 109, 110 (stating similar).)

The Companies are lenders and extend lines of credit to other companies as part of their ordinary course of business. (RCOF Decl. ¶ 5; R&R Decl. ¶ 5 (together the "Declarations".) The Companies are Delaware limited liability companies with their principal places of business in Texas and South Carolina. (*Id.*) The Companies have no employees or physical assets in North Carolina. (Declarations ¶ 6.) The Companies do not maintain any offices, bank accounts, P.O. boxes, telephone listings, or real property in North Carolina. (*Id.*) The Companies have never maintained a website that was publicly

accessible to residents of North Carolina. (*Id.*) The Companies have never been registered to do business in North Carolina. (*Id.* ¶ 7) They do not have a registered agent for service of process in North Carolina and have never been subjected to the jurisdiction of North Carolina courts, nor consented to suits in North Carolina. (*Id.*)

The extent of the Companies' relationship with any entity owned by the Tribe is to provide a credit facility. (*Id.* ¶ 12.) Neither Spratt nor the Tribal Council Defendants have ever managed, controlled, or had a financial or equity interest in the Companies. (*Id.* ¶¶ 8, 9.) The Companies do not drive, manage, operate, direct, or otherwise control Spotloan's lending operations or customer service functions. (*Id.* ¶ 10.) None of the contracts to which the Companies are or have been a party to with respect to the Tribe or any Tribal Entities are or ever have been governed by North Carolina law. (*Id.* ¶ 13.) And the Companies are not parties to any agreements with Plaintiffs, nor have they ever issued any loans to, serviced loans for, or collected any charges from Plaintiffs. (*Id.* ¶ 15.)

## ARGUMENT

**I.      The Court does not have personal jurisdiction over the Companies.**

This Court should dismiss Plaintiffs' claims against the Companies for lack of personal jurisdiction because (i) the Court lacks specific jurisdiction as the Companies have not purposely availed themselves of the privilege of conducting business in North Carolina; and (ii) the Court lacks statutory jurisdiction because RICO does not authorize personal jurisdiction where the RICO claim itself is insubstantial.

4

A district court may only exercise "personal jurisdiction over a non-resident defendant [when the] plaintiff show[s] that maintenance of the lawsuit is authorized by the state long-arm statute and the Due Process Clause." *Godfredson v. JBC Legal Grp., P.C.*, No. 5:04-CV-390-FL(1), 2005 WL 8159322, at *2 (E.D.N.C. July 13, 2005) (citing *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)). "Given that the North Carolina long-arm statute extends to the limit permissible under the Due Process Clause, the court's inquiry focuses on whether [the] defendant had 'certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Mitrano*, 377 F.3d at 406) (internal citation omitted).

A court must have either general or specific jurisdiction over each defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Certain statutory provisions also provide grounds for jurisdiction. *Reynolds v. United States Gov't*, No. 7:22-CV-00178-FL, 2023 WL 5826901, at *15 (E.D.N.C. July 21, 2023), *report and recommendation adopted*, No. 7:22-CV-178-FL, 2023 WL 5350566 (E.D.N.C. Aug. 21, 2023). "To establish specific personal jurisdiction, the plaintiff must show that the out-of-state defendant 'purposefully directs his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at *13 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (alterations omitted).[1]

---

[1] Plaintiffs do not allege the Court has general personal jurisdiction over Defendants. (Compl. ¶ 12.)

Finally, "'[w]here Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.'" *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-CV-00668, 2015 WL 4772524, at *4 (S.D.W. Va. Aug. 12, 2015) (quoting *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir.1984)). "To succeed under this theory, of course, the plaintiff must have a colorable claim against the defendant under RICO." *Id.*

"When a court's personal jurisdiction is properly challenged, a plaintiff bears the burden of proving the existence of grounds for jurisdiction by a preponderance of the evidence." *DP Env't Servs., Inc. v. Bertlesen*, 834 F. Supp. 162, 164 (M.D.N.C. 1993); *see also Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 704 (4th Cir. 1970) ("The burden of proving jurisdictional facts rests upon the plaintiff.").

### A. The Companies are not subject to specific personal jurisdiction in North Carolina.

"The Fourth Circuit has explained that, in determining whether specific personal jurisdiction over a defendant exists, courts should 'consider (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Reynolds*, 2023 WL 5826901, at *14 (quoting *ALS Scan, Inc. v. Digit. Serv. Consultants*,

Inc., 293 F.3d 707, 712 (4th Cir. 2002)).  "The court must find that the plaintiff has satisfied each of these three prongs."  *Id.*

*First,* the Companies have never purposefully availed themselves of the privilege of conducting activities in North Carolina.  In fact, the only connection between any of the Defendants in this matter and North Carolina is that non-party Spotloan marketed and originated loans to consumers throughout the country, including in North Carolina.  But that attenuated connection does not establish a connection between *the Companies* and North Carolina.  "As the Supreme Court has made clear . . . the connection between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum State.'"  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

*Second*, Plaintiffs fail to show their claims arise out of the Companies' activities in North Carolina since those activities are non-existent.  Indeed, Plaintiffs allege that their claims arise out of loans they obtained from Spotloan, not the Companies.  (*See* Compl. ¶ 131 (emphasis added) ("Plaintiff Michael Goetting applied for and obtained two loans *from Spotloan*."); ¶ 132 (same for Webb); ¶ 133 (same for Edgell); ¶ 134 (same for Childs).  Plaintiffs' claims, therefore, do not arise out of any conduct of the Companies, but rather their individual dealings with Spotloan.

Unable to connect the Companies to North Carolina, Plaintiffs resort to group-pleading, alleging *en masse* that "*Defendants* . . . have conducted business in this District and Division, including the issuance of the high-interest payday loans that gave rise to

7

Plaintiffs' claims." (Compl. ¶ 12 (emphasis added).) This generalized claim is insufficient to establish the Court's jurisdiction over the Companies and also epitomizes the sort of group pleading that courts disfavor. That is, it "groups the defendants together and is not specific about the activities or actions of any particular defendant . . . in or directed towards North Carolina." *See Vision Motor Cars, Inc.*, 981 F. Supp. 2d at 469. When a complaint uses "the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom, it is impossible for any of th[o]se individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The danger of this is exemplified by the fact that Plaintiffs' claims are not true—the Companies do not conduct business in North Carolina, and have never issued any loans to Plaintiffs, let alone at any unlawful interest rate. (Declarations ¶ 15.) Plaintiffs cannot circumvent due process boundaries by lumping the Companies in with all Defendants.

*Finally*, the Court's exercise of personal jurisdiction over the Companies would not be constitutionally reasonable. "Due process requires that a defendant be haled into court in a forum State based on *his own affiliation* with the State, not based on the . . . attenuated contacts he makes by interacting with other persons affiliated with the State." *Mobilization Funding, LLC v. Stokes*, No. 25-1050, 2025 WL 3749859, at *4 (4th Cir. Dec. 29, 2025) (quoting *Walden*, 571 U.S. at 286) (emphasis added).

Plaintiffs attempt to attribute Spotloan's contacts with North Carolina to the Companies. But the extent of the Companies' relationship with Spotloan is providing an

8

open line of credit to Spotloan as part of the Companies' ordinary business as a creditor. (*See* Declarations ¶¶ 5, 12.)  "[F]unding alone is not enough to establish the requisite minimum contacts with the forum state—especially when the funding was provided in a different state."  *Dixon v. Gatzke*, 790 F. Supp. 3d 679, 694 (N.D. Ill. 2025).  Thus, while the Complaint states that the Companies conduct business "*from* California and other locations far from the Tribe's reservation in North Dakota" (Compl. ¶ 7), it lacks facts showing the Companies aim any of those alleged activities *at North Carolina*, which is the relevant consideration.  *See, e.g.*, *Walden*, 571 U.S. at 291 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); *Tatoian v. Andrews*, 100 F. Supp. 3d 549, 555 (W.D. Va. 2015) ("Most importantly, [defendant] initiated the allegedly fraudulent wire transfer in California, not [the forum state of] Virginia.").

**B.     RICO does not provide a statutory basis for jurisdiction over the Companies.**

Plaintiffs also argue that the Court "has personal jurisdiction over Defendants because RICO authorizes nationwide service of process" and "Defendants are all residents of the United States."  (Compl. ¶ 11.)  While RICO authorizes service of process "in any judicial district in which [a] person resides, is found, has an agent, or transacts his affairs," 18 U.S.C. § 1965, "Plaintiffs may not use their RICO claim as a jurisdictional catch-all."  *See Reynolds*, 2023 WL 5826901, at *15.  Plaintiffs allege that RICO's nationwide service provision authorizes jurisdiction over the Companies in this case.  (Compl. ¶ 11 (citing

9

*ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997).)  But *ESAB* held "that there was no constitutional bar to asserting personal jurisdiction only 'so long as the federal claim is not wholly immaterial or insubstantial.'"  *Godfredson*, 2005 WL 8159322, at *6 (quoting *ESAB Grp., Inc.*, 126 F.3d at 629).  "Without a substantial RICO claim, this basis for asserting personal jurisdiction over . . . defendants fails."  *Id.*

The RICO claims against the Companies *are* immaterial and insubstantial.  Claims are immaterial and insubstantial when they fail to plausibly allege each of the elements of a cause of action.  *See id.* ("the RICO claim, as presently constituted, is insufficiently substantial and material . . . because [plaintiffs] can assert no injury on the part of the named plaintiffs").  Only six paragraphs in the Complaint mention either RCOF or R&R, and those consist of nothing more than conclusory allegations pled largely "upon information and belief" or under the umbrella term "Defendants," thereby making it impossible to determine the specific acts attributable to the Companies.  As detailed in Section III below, Plaintiffs fail to assert a viable RICO claim because they fail to adequately allege that (i) a RICO enterprise exists; (ii) the Companies conducted or participated in the management of the alleged RICO enterprise's affairs, (iii) any conduct of the Companies proximately caused their alleged injuries, and (iv) the Companies conspired to violate RICO.

"RICO allows courts to exert personal jurisdiction over far-flung Defendants when 'it is shown that the ends of justice require that other parties residing in any other district be brought before the court.'"  *Reynolds*, 2023 WL 5826901 at *15 (quoting 18 U.S.C. § 1965(b)).  Yet, as Plaintiffs concede, personal jurisdiction under RICO still must "not

10

violate the Fifth Amendment." (Compl. ¶ 11.) In *Rush v. Savchuk*, the Supreme Court recounted that the lower court "attempted to attribute [Defendant] State Farm's contacts to [Defendant] Rush by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction." 444 U.S. 320, 331 (1980). "The result was the assertion of jurisdiction over Rush based solely on the activities of State Farm." *Id.* at 331-32. The Court declared that "[s]uch a result is plainly unconstitutional." *Id.* at 332. Plaintiffs ask the Court to employ the same unconstitutional strategy here.

Because Plaintiffs fail to allege even a colorable RICO claim against the Companies, this Court should decline to use RICO's service of process provision to hale the Companies into North Carolina. *See e.g.*, *Don't Look Media, LLC v. Fly Victor Ltd.*, No. 19-61555-CIV, 2020 WL 7481448, at *2 (S.D. Fla. Feb. 5, 2020), aff'd, 999 F.3d 1284 (11th Cir. 2021) ("Plaintiff has failed to assert a colorable claim under [the] federal [RICO] statute and it is not entitled to take advantage of that statute's nationwide service of process provision.").[2]

---

[2] If the Court finds that it lacks personal jurisdiction over the Companies, it should also dismiss Plaintiffs' state law claims against the Companies. *See, e.g.*, *HSBC Bank USA, Nat. Ass'n*, 2015 WL 4772524 at *8 ("Without a federal [RICO] claim to anchor personal jurisdiction over the LubeCenter, the Court declines to assert pendent personal jurisdiction" with respect to the remaining claims).

**II. The Court should dismiss the Complaint because Plaintiffs failed to join the Tribe and Spotloan as defendants.**

This Court should dismiss the Complaint because both Spotloan and the Tribe are necessary and indispensable parties to this litigation. Under Rule 19(a), an entity must be joined as a party to an action if it has "an interest relating to the subject of the action" and disposing of the action in its absence could "impair [its] ability to protect the interest." FED. R. CIV. P. 19(a). "[A] district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020). "If the nonjoined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action." *Id.* at 218-19. Dismissal, though a harsh remedy, "is 'required' if the nonjoined party 'is both necessary and indispensable.'" *Id.* at 219. A district court "must proceed pragmatically, examining the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it." *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000).

**A. Spotloan and the Tribe are required parties under Rule 19(a).**

Both Spotloan and the Tribe are required parties. Spotloan executed every contract at issue in this case and thus has an interest in the contractual rights that Plaintiffs seek to invalidate. (*See* Compl. ¶ 22.) As Spotloan's owner, the Tribe is also a necessary party, having (i) a sovereign interest in protecting its freedom to make and enforce its own contract laws and (ii) an economic interest in the lending practices under the Court's review. Since the relief that Plaintiffs seek "amounts to a declaratory judgment that the

12

present [lending] conducted by the tribe[] is unlawful," the Tribe is a necessary party as well. *See Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002).

**B.     Neither Spotloan nor the Tribe can be joined due to their sovereign immunity.**

"Though a nonparty may formally claim an interest in an action, a 'court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join.'" *Gunvor*, 948 F.3d at 220 (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008)). Courts must accord "proper weight to the compelling claim of sovereign immunity." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 869 (2008). Indeed, "dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign" and its immunity claims are not frivolous. *Id.* at 867. Here, as discussed above, both the Tribe and Spotloan, who will likely be deemed an arm of the Tribe, have legitimate claims to tribal sovereign immunity. *See Williams v. Big Picture Loans*, LLC, 929 F.3d 170, 177 (4th Cir. 2019) ("[W]e hold that the Entities are entitled to sovereign immunity as arms of the Tribe and therefore reverse the district court's decision."). Thus, the Court should consider *sua sponte* the absence of the Tribe and Spotloan and dismiss this action for Plaintiffs' failure to join them as defendants. *See Gunvor*, 948 F.3d at 220.

**C.     Spotloan and the Tribe are indispensable parties under Rule 19(b).**

When a required party cannot be joined, courts look to the factors listed in Rule 19(b) to determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). Those factors

13

focus on prejudice to both the absent parties and the existing parties. FED. R. CIV. P. 19(b)(1)-(4). Here, both Spotloan and the Tribe, as well as Plaintiffs and the Companies, will be prejudiced if this matter proceeds without the former two.

*First,* as discussed above, the Tribe faces prejudice as both a commercial actor and as a sovereign. *Second*, each of the loan agreements at issue were made between Plaintiffs and Spotloan. (Compl. ¶¶ 131-34.) Therefore, not only is Spotloan a necessary party to this action, Spotloan, as "a contracting party[,] is the paradigm of an indispensable party." *See Nat'l Union*, 210 F.3d at 252.

*Third*, Plaintiffs will also be prejudiced. Plaintiffs allege that in 2020 Spotloan entered into a nationwide class settlement related to its origination of "illegal loans." (Compl. ¶ 1.) Here, the gravamen of Plaintiffs lawsuit is that "[d]espite this settlement," Spotloan has continued to originate new loans, but this time in cahoots with the Defendants in this action. (*See id.*) By Plaintiffs' own words, an order enjoining only the existing Defendants will have no bearing on Spotloan's conduct, or the Tribe's for that matter. (*See id.* ¶¶ 131-44, 221.) Similarly, the fact that Plaintiffs sue the Tribal Council Defendants in their official capacities does not cure the Tribe's indispensability, since enjoining those individuals has no bearing on their successors' conduct. "To obtain injunctive or declaratory relief against a successor to a government official, it is well established that there must be some indication that they intend to continue the [unlawful] practices alleged in the complaint." *Felts v. Reed*, No. 4:20-CV-00821 JAR, 2022 WL 2290450, at *1 (E.D. Mo. June 24, 2022) (alterations omitted) (collecting cases).

*Finally*, the Companies will be prejudiced because they will risk reputational damage by potentially bearing responsibility for loans they did not originate (Spotloan did that) by a company it does not control (the Tribe does that) and will also bear the financial burden of defending a lawsuit in a state with which they do not conduct business in.

## III. Plaintiffs fail to state a claim upon which relief can be granted.

Only a handful of paragraphs in the Complaint even mention the Companies. (*See* Compl. ¶¶ 7, 20, 21, 106, 109, 110.) And each allegation contained therein is either conclusory, pled solely "upon information and belief," or groups all Defendants together without identifying which acts are attributable to which Defendant. Consequently, Plaintiffs fail to state a claim upon which relief may be granted and this Court should dismiss each of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. "To be facially plausible, a claim must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable' and must demonstrate 'more than a sheer possibility that a defendant has acted unlawfully.'" *Iqbal*, 556 U.S. at 678 (alteration omitted). Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

Sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. "Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice.'" *Kirwin v. Marathon Moving Co., Inc.*, No. 1:23-CV-686, 2025 WL 2653162, at *3 (M.D.N.C. Sept. 16, 2025) (quoting *Iqbal*, 556 U.S. at 678). "[A] court considering a motion to dismiss can choose to begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### B. Plaintiffs fail to state a claim under RICO Section 1962(c).

The Court should dismiss Plaintiffs' RICO claim because the Complaint is devoid of any facts showing (i) a RICO enterprise; (ii) that the Companies conducted or participated in the management of the alleged enterprise's affairs, or (iii) that any conduct of the Companies proximately caused their alleged injuries.

#### i. Plaintiffs fail to allege a RICO enterprise.

A RICO plaintiff must sufficiently allege the existence of a RICO enterprise – an "association that exists separate and apart from the pattern of racketeering activity in which it engages." *United States v. Tillett*, 763 F.2d 628, 631 (4th Cir. 1985). [T]he organization

16

[must have] an existence beyond that which was necessary to commit the predicate crimes." *Id.* at 632. A "pattern of racketeering activity" does not establish an "enterprise." *United States v. Griffin*, 660 F.2d 996, 999 (4th Cir. 1991). Instead, the enterprise must have "an ongoing organization, formal or informal" and its members must "function as a continuing unit" that exists "separate and apart" from the predicate racketeering acts themselves. *Id.*

Plaintiffs have not sufficiently alleged an enterprise here. Plaintiffs do not plead any separate acts taken by any of the defendants. The defendants are only named as such because they are the CEO and Tribal Council members of BlueChip and the Companies allegedly fund and operate Spotloan. Plaintiffs allege no specific predicate acts showing an enterprise separate and apart and therefore their RICO claims fail.

### ii. Plaintiffs fail to allege the Companies conducted or participated in the management of the alleged enterprise's affairs.

RICO makes it a crime to conduct or participate in the conduct of an unlawful enterprise's affairs. *See* 18 U.S.C. § 1962(c). "'[T]o conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' . . . one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)). In other words, "one must have some part in directing those affairs." *Id.* at 179.

Here, the entirety of Plaintiffs' allegations against the Companies are captured in Paragraphs 109 and 110 of the Complaint:

17

1. "Defendant Spratt—a non-tribal member—is the CEO of Mikinok Enterprises, the owner of Spotloan, and thus directs and operates Spotloan's lending business, including, upon information and belief, through servicing and loan agreements entered between he, RCOF, R&R, and tribal representatives on similar terms to those outlined above with respect to the LVD lending enterprises [in a different case]."

2. "Upon information and belief, Defendants RCOF and R&R have provided most of the funding for Spotloan's operations and, in return, have entered into loan agreements that provided them with a security interest in all Spotloan's assets and grant them near complete control over Spotloan's operations."

(Compl. ¶¶ 109-10; *see also* ¶¶ 7, 20, 21, 106 (stating same).)

*First*, both of those allegations are pled solely "upon information and belief." The Court should not accord those statements any weight because they are merely conclusory allegations. *See Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, 615 F. Supp. 3d 379, 385 (M.D.N.C. 2022) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."); *Vision Motor Cars, Inc.*, 981 F. Supp. 2d at 471 ("conclusory allegations need not be considered"); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 109 (4th Cir. 2025) (internal quotation marks omitted) ("conclusory allegations . . . [are] not enough to state a RICO claim").

*Second*, the two allegations hinge on purported terms in loan and servicing agreements that Plaintiffs *surmise* "grant [the Companies] near complete control over Spotloan's operations." (Compl. ¶¶ 109-10.) But the only evidence Plaintiffs offer to support that these agreements even exist is that a completely different tribe used those types

18

of agreements as part of their lending operation. (*Id.* at ¶ 109.) Plaintiffs dedicate nearly equal space in their brief to alleging facts about other lending operations as they do to alleging facts about the operation at issue in this case. (*Compare* Compl. ¶¶ 52-93 *with* ¶¶ 94-139.) Indeed, all of the exhibits attached to Plaintiffs' Complaint are documents from other cases and other lending operations. (Compl., Ex. Nos. 1-6.) Meanwhile, nothing in the Complaint supports a reasonable inference that those types of agreements exist here, let alone with those same terms. "Plaintiffs . . . must plausibly allege the existence of a written agreement." *Jackson v. Minnesota Life Ins. Co.*, 275 F. Supp. 3d 712, 733 (E.D.N.C. 2017). "It is not the court's responsibility to fill the gaps in plaintiffs' case by speculating that a written agreement might exist and that it might be in [the Companies'] possession if it does." *See id.* The Companies are "not required to submit to discovery to prove the non-existence of a written agreement the existence of which is not supported by any plausible allegation." *See id.; see also Swaim v. Westchester Acad., Inc.*, 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001) (citing *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir.1991)) ("Discovery . . . should not be used as a fishing expedition.").

*Third*, even if Spotloan did form a RICO enterprise, the Companies "[p]roviding capital to a member of a RICO enterprise . . . is a far cry from 'participat[ing] in the operation or management of the enterprise itself.'" *Doe 1 v. Varsity Brands, LLC*, No. CV 6:22-2957-HMH, 2023 WL 4209799, at *16 (D.S.C. June 27, 2023) (quoting *Reves*, 507 U.S. at 185). Courts have repeatedly held that lending money to an enterprise is not enough to establish a role in directing the enterprise's affairs. *See, e.g.*, *Dongelewicz v. PNC Bank*

*Nat'l. Ass'n.*, 104 F. App'x 811, 818 (3d Cir. 2004) (Defendant "was merely a lender—it supplied financing for a development that failed, and then took steps to preserve its collateral.  Such involvement does not support a finding that it 'conducted' the affairs of any 'enterprise' under *Reves*."); *Renaissance Ctr. Venture v. Lozovoj*, 884 F. Supp. 1132, 1146 (E.D. Mich. 1995) ("[P]assive financing arrangements are insufficient to give rise to [RICO] liability. Because defendants . . . did not manage or direct the enterprise, they may not be liable under RICO.").  "RICO 'does not penalize tangential involvement in an enterprise,' and '[a]llegations that a defendant had a business relationship with the putative RICO enterprise or that a defendant performed services for that enterprise' do not trigger liability."  *Id.* (quoting *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009)).  Accordingly, the fact that the Companies extended a line of credit to Spotloan as part of the Companies' ordinary course of business as a creditor does not indicate wrongdoing under RICO.

          **iii.**        **Plaintiffs fail to plausibly allege that their purported injuries were proximately caused by the Companies.**

Plaintiffs seek damages based on their alleged "payment of unlawful debt to the Usurious Lending Enterprise," alleging that those "money transfers would not have been made but for Defendants' conduct."  (Compl. ¶ 157.)  Even if this sort of group pleading were sufficient to state a claim as to the Companies—it is not—the Fourth Circuit does not construe RICO "as simply requiring 'but for' causation."  *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018).  "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct

result—generally at 'the first step' in the chain of causation." *Id.* at 494 (citing *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983)); *see also Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 17–18 (2010) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006)) (RICO's "reach is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm").

Here, the Companies are not parties to any of the loan agreements that purportedly give rise to Plaintiffs' claims and the Complaint offers no detail regarding any steps the Companies took to collect the allegedly unlawful debt. Plaintiffs' failure to identify the requisite nexus between the Companies and their purported injuries is fatal to their Complaint, given that the Supreme Court has "reiterated and reinforced its application of the proximate cause requirement to civil RICO claims." *See Slay's Restoration, LLC*, 884 F.3d at 493; *see also Nevels v. Freemont Inv. & Loan*, No. 1:11CV882, 2013 WL 12303948, at *2 (M.D.N.C. Mar. 30, 2013), *report and recommendation adopted*, No. 1:11CV882, 2013 WL 12303947 (M.D.N.C. Apr. 29, 2013) (dismissal of RICO claims appropriate where "Plaintiff fail[ed] to allege how his business or property ha[d] been harmed due to ***Defendants' conduct***, and fail[ed] to allege sufficient facts for the Court to reasonably infer that ***Defendant*** [was] liable to Plaintiff for any racketeering activity") (emphasis added); *Palmer v. Nationwide Mut. Ins. Co.*, 945 F.2d 1371, 1377 (6th Cir. 1991) ("We are able to find no reference at all in the complaint to conduct of [defendant] . . . . There is no basis whatever, then, in the complaint for any RICO claim, or any other legal claim, as to [defendant].").

21

**C.    Plaintiffs fail to state a claim under RICO Section 1962(d).**

Plaintiffs allege the Companies violated RICO Section 1962(d) by conspiring to violate § 1962(c).  However, when, as demonstrated above, "the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well." *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001); *Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012) (dismissing RICO conspiracy claim "as a matter of law" because "the plaintiffs [had] not alleged a plausible violation of [a] RICO predicate act").

Regardless, Plaintiffs' conspiracy claim does not come close to being sufficient to stand on its own terms.  A plaintiff alleging a conspiracy must plead "enough factual matter (taken as true) to suggest that an agreement was made."  *C.f. Twombly*, 550 U.S. at 556 (discussing conspiracy claims under § 1 of the Sherman Act, 15 U.S.C. § 1); *see Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1069 n.6, 1074 (11th Cir. 2017) (RICO conspiracy allegations failed to satisfy *Twombly* framework); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (same).  Here, Plaintiffs merely allege that "Defendants each knowingly agreed to participate in the scheme . . . that allowed the Enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under state usury laws." (Compl. ¶ 166.)  This "conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *See Twombly*, 550 U.S. at 556–57; *see also Carias v. Harrison*, No. 5:13-CT-3264-FL, 2016 WL 1171544, at *9 (E.D.N.C. Mar. 23, 2016), *aff'd*, 705 F. App'x 181 (4th Cir. 2017) ("Mere conclusory

22

allegations of a conspiracy do not demonstrate the 'meeting of the minds.'").  Neither do the Companies' affairs as a creditor support a conspiracy claim.  *See Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 F. App'x 811, 818 (3d Cir. 2004) (defendant "providing financing, which it had a contractual obligation to do . . . does not violate § 1962(d)").

**D.      Plaintiffs fail to state a claim under the North Carolina Consumer Finance Act.**

Plaintiffs allege that the Companies violated § 53-166(a) of the North Carolina Consumer Finance Act.  (Compl. ¶¶ 190-91.)  Section 53-166(a) provides:

> "No person shall engage in the business of lending or servicing a loan in an amount of twenty-five thousand dollars ($25,000) or less and contract for, exact, or receive, directly or indirectly, on or in connection with the loan, any charges whether for interest, compensation, consideration, or expense, or any other purpose whatsoever, that in the aggregate are greater than permitted by Chapter 24 of the General Statutes, except as provided in and authorized by this Article, and without first having obtained a license from the Commissioner."

N.C. GEN. STAT. § 53-166(a).  This claim fails because Plaintiffs have not pled facts demonstrating that *the Companies* (i) provided or serviced any of their loans or (ii) contracted for, exacted, or received any charges in connection with their loans.  Rather, Plaintiffs plead this cause of action merely by parroting the language of the statute itself:

> "Defendants have engaged in the business of lending or servicing loans in amounts of $25,000 or less, and have contracted for, exacted, and received—both directly and indirectly through their control of Spotloan—in connection with such loans charges in excess of those permitted by Chapter 24 of the General Statutes."

(Compl. ¶ 187.)  Courts have long held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see, e.g.*, *Cook v. Howard*,

23

484 F. App'x 805, 810 (4th Cir. 2012) ("Just as troubling, the amended complaint parrots the language of various legal theories without stating any facts to demonstrate that type of conduct.").

Indeed, Plaintiffs recite the element that Defendants sought charges from Plaintiffs "both directly" and indirectly through their control of Spotloan, but their Complaint is completely devoid of facts showing *the Companies* ever interacted with Plaintiffs.[3] (*But see* Declarations ¶ 15 (the Companies are "not a party to any agreements" and do "not have any relationship with Plaintiffs.").) Plaintiffs likewise fail to provide facts that would indicate the Companies ever possessed control over Spotloan, in support of their claim that the Companies sought charges from Plaintiffs indirectly. Plaintiffs concede that "Spotloan's website . . . is the sole avenue through which Spotloan accepts applications for, issues, and services its usurious loans." (Compl. ¶108.) Yet Plaintiffs make no attempt to allege that the Companies have ever had control over Spotloan's website. (*See id.* ¶¶ 99, 101, 118.) Plaintiffs allege the Companies gained control over Spotloan through servicing and loan agreements. (*See, e.g.*, *id.* ¶109-10.) Yet Plaintiffs offer no plausible reason for the Court to believe those agreements even exist. Rather, Plaintiffs speculate that because those types of agreements were used in other lending operations, they must have been used here. (*Id.* ¶109.) Plaintiffs have failed to plead any facts showing the Companies violated North Carolina law.

---

[3] The Complaint does not even allege dates for when Plaintiff Goetting, who purportedly applied for and obtained loans "from his home in North Carolina," did so. (*See* Compl. ¶ 131.)

**E. Plaintiffs fail to state a claim under the Georgia Payday Lending Act.**

The Georgia Payday Lending Act makes it unlawful "for any person to engage in any business, in whatever form transacted, including, but not limited to, by mail, electronic means, the internet, or telephonic means, which consists in whole or in part of making, offering, arranging, or acting as an agent in the making of loans of $3,000.00," unless certain exceptions apply. Ga. Code Ann. § 16-17-2(a).

Consistent with their North Carolina claim, Plaintiffs plead their Georgia cause of action simply by reciting the language of the statute: "Defendants have each engaged in a business transacted through at least mail, electronic, and internet means which consists in whole or in part of making, offering, arranging, or acting as an agent in the making of loans of $3,000.00 or less." (Compl. ¶ 199.) Plaintiffs have done "nothing more than parrot the language of certain elements of a claim . . . all of which are conclusory allegations devoid of factual adornment and which the Court need not accept as true." *Brown v. Walmart*, No. 1:20CV59, 2022 WL 295708, at *3 (M.D.N.C. Feb. 1, 2022).[4]

**F. Plaintiffs fail to state a claim for unjust enrichment.**

To establish a claim for unjust enrichment, a party must allege that it conferred a benefit on the other party, the other party consciously accepted the benefit, and the benefit was not conferred officiously or gratuitously. *LifeBrite Hosp. Grp. of Stokes, LLC v. Blue*

---

[4] Moreover, should the Court dismiss Plaintiffs' RICO claims, it should also dismiss Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) (permitting district courts to "decline to exercise supplemental jurisdiction" where "the district court has dismissed all claims over which it has original jurisdiction").

25

*Cross & Blue Shield of N. Carolina*, No. 1:18CV293, 2022 WL 801646, at \*12 (M.D.N.C. Mar. 16, 2022). While Plaintiffs recite the elements for unjust enrichment in their Complaint (Compl. ¶ 179), they do not plead facts sufficient to show they conferred a benefit on the Companies, or that the Companies consciously accepted any such benefit. *See Kirwin*, 2025 WL 2653162, at \*3 (quoting *Iqbal*, 556 U.S. at 678) ("'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice'").

### G.     Plaintiffs fail to state a claim for a declaratory judgment.

As to Plaintiffs' claim seeking a declaration that the loans they received are void, invalid, and uncollectable, not only are the Companies not parties to any loan agreements with Plaintiffs, such that a declaration against the Companies could be appropriate, the Court should also dismiss Plaintiffs' declaratory judgment claim as redundant to Plaintiffs' RICO, state law, and unjust enrichment claims. "Over the years, [the Fourth Circuit] has enumerated several factors that the district court should consider in deciding whether to dismiss a declaratory judgment action." *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 788 (4th Cir. 2012). For instance, "a declaratory judgment action should not be used 'to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998)). The Fourth Circuit has "also emphasized the need to promote 'federalism, efficiency, [and] comity.'" *Id.* (quoting *Aetna*, 139 F.3d at 423). Here, Plaintiffs seek a declaratory judgment regarding

"the validity and enforceability of the loan agreements." (Compl. ¶ 220.) The issues of validity and enforceability will necessarily be covered in Plaintiffs' substantive RICO, RICO conspiracy, North Carolina, Georgia, and unjust enrichment claims, as Plaintiffs argue that the loan agreements are void and unenforceable as part of each of those claims.

## CONCLUSION

WHEREFORE, Defendants RCOF and R&R respectfully request that the Court enter an order dismissing Plaintiffs' claims against them and granting such other and further relief as this Court deems just and proper.

[*signatures on next page*]

27

Dated this 19th day of January, 2026.

        **NELSON MULLINS RILEY &**
        **SCARBOROUGH LLP**

        /s/ Robert L. Lindholm
        Robert L. Lindholm (N.C. Bar No. 52800)
        robert.lindholm@nelsonmullins.com
        301 S. College Street, 23rd Floor
        Charlotte, NC 28202
        Telephone: 704.417.3231
        Facsimile: 704.377.4814

        Matthew G. Lindenbaum*
        matthew.lindenbaum@nelsonmullins.com
        One Financial Center, Suite 3500
        Boston, MA 02111
        Telephone:  617.217.4665
        Facsimile:  617.217.4710

        *Special Appearance Forthcoming

        *Counsel for R&R SPE LLC and*
        *RCOFIII Spec-Fin Credit 1 LLC*

## CERTIFICATE OF WORD COUNT

Undersigned hereby certifies that the foregoing brief does not exceed 7,500 words, including the body of the brief, headings, and footnotes, but excluding the caption, signature lines, certificate of service, this Certificate of Word Count, and/or any cover page or index.

Dated: January 19, 2026

> /s/ Robert L. Lindholm
> Robert L. Lindholm (N.C. Bar No. 52800)
> robert.lindholm@nelsonmullins.com
> 301 S. College Street, 23rd Floor
> Charlotte, NC 28202
> Telephone: 704.417.3231
> Facsimile: 704.377.4814
>
> *Counsel for R&R SPE LLC and*
> *RCOFIII Spec-Fin Credit 1 LLC*

29

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

Dated: January 19, 2026

/s/ Robert L. Lindholm
Robert L. Lindholm (N.C. Bar No. 52800)
robert.lindholm@nelsonmullins.com
301 S. College Street, 23rd Floor
Charlotte, NC 28202
Telephone: 704.417.3231
Facsimile: 704.377.4814

*Counsel for R&R SPE LLC and*
*RCOFIII Spec-Fin Credit 1 LLC*

30