# Exhibit 3

# SERVICES AGREEMENT

THIS AGREEMENT ("Agreement"), made as of the 21st day of July, 2012, (the "Effective Date") is between National Performance Agency, LLC ("NPA") a Delaware limited liability company and Silver Cloud Financial, Inc. ("Silver Cloud"), a wholly owned instrumentality and economic development arm of the Habematolel Pomo of Upper Lake ("Tribe"), a federally recognized Indian tribe, organized as a business entity under Tribal Law.

WHEREAS, the Tribe has determined that to promote tribal self-determination and economic development, the Tribe desires to own and operate a lending services company; and

WHEREAS, NPA provides certain call center services and has represented to Silver Cloud that it has experience in customer service, account management and call center services, and has the business capacity, knowledge, and expertise to assist Silver Cloud in such services related to Silver Cloud's operation of its business; and

WHEREAS, Silver Cloud desires to obtain the use of certain services for the purpose of enabling Silver Cloud, or its affiliates, to operate Silver Cloud's business.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Services. NPA will provide Silver Cloud, or its affiliates, with the services set forth on Exhibit A (the "Services"), as requested by Silver Cloud from time to time, and according to the service levels as set forth on Exhibit B. Subject to Section 4 hereof, NPA shall provide the Services for one (1) year from the Effective Date of this Agreement (the "Term"). The Term may be extended by the written mutual agreement of the parties hereto. In providing the Services, NPA is not obligated to (a) hire any additional employees not currently employed by NPA as of the date hereof, (b) maintain the employment of any specific employee, or (c) purchase, lease or license any additional equipment other than such equipment currently owned or operated by NPA as of the date hereof.

2. Payment. Services related to Silver Cloud's use of NPA's employees shall be charged and paid per the schedule set forth in Exhibit A.

3. Warranty; Liability. NPA represents and warrants that NPA shall provide Services to Silver Cloud pursuant to this Agreement in a manner consistent with industry standards and norms. To NPA's knowledge the execution, delivery, and performance of this Agreement does not violate, conflict with, permit the cancellation of, or constitute a default under any agreement to which NPA is a party or by which NPA is bound. To NPA's knowledge the execution, delivery and performance of this Agreement by NPA does not violate or conflict with (A) any provision of the governance documents of NPA or (B) any applicable law, or any order, arbitration award, judgment or decree to which NPA is a party or by which NPA or any of its assets may be bound. NPA's maximum liability to, and the sole remedy of, Silver Cloud for breach of this Agreement or otherwise with respect to Services is a refund of the price paid for the particular Service or, at the option of Silver Cloud, a redelivery (or delivery) of the Service, unless the breach arises out of the gross negligence or willful failure of performance of NPA. In

no event shall NPA be liable to Silver Cloud for any consequential, incidental or special damages suffered by Silver Cloud arising out of this Agreement or sustained in connection with the delivery or performance of the Services, whether resulting from negligence of NPA or otherwise. NPA shall immediately notify Silver Cloud of any situation which may result in the loss or unauthorized disclosure of confidential customer information and shall immediately provide Silver Cloud with (i) a list of the names of persons whose customer information has been disclosed or that may be disclosed, (ii) a description of the type and categories of the customer information that has been or may be disclosed and (iii) the circumstances underlying the unauthorized or potentially unauthorized disclosure. NPA shall cooperate with Silver Cloud and, at the direction of Silver Cloud, shall assist in notifying such customer or customers and shall take any other remedial action recommended by Silver Cloud and/ or required by applicable law. NPA shall bear the expense of this notification, any out of pocket costs incurred by Silver Cloud including attorneys' fees and other costs related thereto.

4. <u>Termination</u>. Any one or more of the Services (or portion thereof) may be terminated prior to the expiration of the Term (a) upon the mutual written agreement of Silver Cloud and NPA, (b) at Silver Cloud's option upon five (5) days written notice to NPA of NPA's failure to cure any failure to perform the services at the quality levels set forth in Exhibit B within thirty (30) days of written notice of such failure to NPA by Silver Cloud, or (c) at NPA's option (i) upon sixty (60) days' advance written notice to Silver Cloud, (ii) upon thirty (30) days advance written notice to Silver Cloud in the event a definitive agreement is executed concerning (x) a sale of 51% of the equity of NPA, (y) a merger of NPA into another entity whereby NPA does not survive the merger, or (z) the sale by NPA of all or substantially all of NPA's assets or (iii) immediately upon written notice to Silver Cloud of change in any legislation or regulation or any court decision following the Effective Date that in the sole opinion of NPA would either significantly impede the operation of NPA, subject NPA to criminal or civil investigation or suit, or expose NPA to liability. All accrued and unpaid charges for Services shall be due and payable upon termination of this Agreement with respect to such Services. Any termination with respect to any single Service shall not terminate this Agreement with respect to any other Service then being provided pursuant to this Agreement, and if only a single Service or a portion of a Service is terminated, the parties will negotiate in good faith the proper reduction in charge for the remaining portion of the terminated Service. Following any termination of this Agreement, each party shall cooperate in good faith with the other to transfer and/or retain all records and take all other actions necessary to provide NPA and Silver Cloud and their respective successors and assigns with sufficient information in the form requested by NPA or Silver Cloud, or their respective successors and assigns, as the case may be, to make alternative service arrangements substantially consistent with those contemplated by this Agreement; provided, however, that in conformance with Section 5 of this Agreement, all customer information shall always be deemed to be owned by and in the possession of Silver Cloud, and unless otherwise required by applicable law, all access to such data by NPA shall be terminated upon termination of this Agreement.

5. <u>Proprietary Rights</u>. Each party acknowledges that, by the terms of this Agreement, the other party may be given information that has been created, discovered or developed by such party and/or in which property rights have been assigned or otherwise conveyed, which

2

information has commercial value and is not in the public domain. The proprietary information of each party will be and remain the sole property of such party and its successors and assigns. Each party shall use the same degree of care that it normally uses to protect its own proprietary information to prevent the disclosure to third parties of information that has been identified as proprietary by written notice to such party from the other party. Neither party shall make any use of the information of the other which has been identified as proprietary except as contemplated or required by the terms of this Agreement. Notwithstanding the foregoing, this Section 5 shall not apply to any information that a party can demonstrate (a) was, at the time of disclosure to it, in the public domain through no fault of such party, (b) was received after disclosure to it from a third party who had a lawful right to disclose such information to it, or (c) was independently developed by the receiving party.

6. Agents; Subcontractors; Requirements. NPA may engage one or more agents or subcontractors to provide all or any portion of the Services, provided that NPA shall remain directly responsible for its obligations hereunder. Servicer will use commercially reasonable methods to comply with applicable laws and regulations, including but not limited to Fair Credit Reporting Act, Graham Leach Bliley Act, Fair Debt Collection Practices Act, and Truth in Lending Act.

7. Relationship of the Parties. NPA will provide the Services as an independent contractor under this Agreement, and NPA will not be deemed to be an employee, partner, joint venturer or agent of Silver Cloud in connection with the provision of the Services by NPA. Except as expressly set forth herein, neither party has the authority to, and each party agrees that it shall not, directly or indirectly, contract any obligations of any kind in the name of or chargeable against the other party without such party's prior written consent.

8. Assignment and Delegation. Neither party to this Agreement may assign any of its rights or obligations under this Agreement without the prior written consent of the other party hereto, except that NPA may (a) engage one or more agents or subcontractors in accordance with Section 6, or (b) assign this Agreement, without the consent of Silver Cloud, to any person that acquires, by purchase, merger, reorganization or otherwise, all or substantially all of NPA's assets. This Agreement shall inure to the benefit of and be binding upon the parties and their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any person other than NPA or Silver Cloud, their affiliates or their respective successors or permitted assigns any rights or remedies under or by reason of this Agreement. Other than as provided in this Section 8, this Agreement does not confer upon any person other than the parties hereto any rights or remedies hereunder.

9. Entire Agreement. This Agreement, including Exhibit A, contains the entire agreement between the parties with respect to Services and supersedes all prior agreements and understandings, oral or written, with respect to such matters, other than any confidentiality agreements entered into between the parties in existence as of the date hereof.

10. Amendment; Waiver. Any provision of this Agreement may be amended or waived if, and only if, such amendment or waiver is in writing and signed, in the case of an amendment, by

3

NPA and Silver Cloud, or in the case of a waiver, by the party against whom the waiver is to be effective. No failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

11. <u>Settlement of Disputes</u>. In the event that either Party to this Agreement believes that the other Party has failed to comply with any requirement of this Agreement, or in the event of any dispute hereunder, including, but not limited to, a dispute over the proper interpretation of the terms and conditions of this Agreement, and absent either Party's ability to exercise self help, the following procedures shall be invoked:

(a) <u>Discussions between the Parties</u>. The goal of the Parties shall be to first resolve all disputes amicably and voluntarily whenever possible. A Party asserting noncompliance or seeking an interpretation of this Agreement first shall serve written notice on the other Party. The notice shall identify the specific Agreement provisions alleged to have been violated or that is in dispute and shall specify in detail the asserting Party's contention and any factual basis for the claim. Senior representatives of both Parties shall meet within ten (10) days of receipt of notice in an effort to resolve the dispute.

(b) <u>Binding Arbitration</u>. After failure to resolve such disputes within twenty (20) days of notice, either Party may refer a dispute arising under this Agreement to arbitration with the American Arbitration Association (AAA). If the dispute centers around an action of a Party, such action shall be postponed or discontinued during the pendency of the arbitration, provided that the lack of action shall not have a negative impact on the economic value of a Party. The Parties shall endeavor to mutually select three arbitrators from a list of qualified arbitrators to be provided by the AAA. If the Parties cannot agree on arbitrators within three (3) Business Days, then the arbitrators shall be named by the AAA. All hearings and other proceedings for such arbitration shall be held in Sacramento, California, unless otherwise agree to by the Parties in writing. The expenses of arbitration charged by the AAA shall be borne equally by the Parties, and each side shall bear its own other costs. The arbitrators shall apply the substantive laws of the State of Delaware as well as the Commercial Arbitration Rules. The arbitrators shall issue a final and binding decision (the "<u>Arbitration Decision</u>") in which the remedies available through arbitration are limited to enforcement of the provisions of this Agreement and any associated equitable or monetary relief. The Arbitration Decision may be enforced as set forth in Section 11(d) below.

(c) <u>Good Faith</u>. The Party asserting breach or seeking an interpretation of this Agreement under this Section 11 shall be deemed to have certified that to the best of such Party's knowledge, information and belief formed after reasonable inquiry, the claim of noncompliance or the request for interpretation of this Agreement is warranted and made in good faith and not for any improper purpose, such as to harass or to cause unnecessary delay or the needless incurring of the cost of resolving the dispute. If the dispute is found to have been initiated in violation of this Section 11, then the arbitrators, upon request or upon his or her own initiative, may impose upon the violating Party an appropriate sanction, which may include an award to the other Party of its reasonable expenses incurred in having to participate in the arbitration; and

4

(d) <u>Enforcement of Arbitration Decision</u>. Notwithstanding any provision of law, either Party to the Agreement may bring an action against the other in the United Stated Federal District Court for Delaware solely for the enforcement of the Arbitration Decision to which the Parties irrevocably consent to the jurisdiction of such court. The Parties agree that the Federal Arbitration Act shall apply to the enforcement of the Arbitration Decision. The Parties agree that the Arbitration Decision shall be final, conclusive and binding on the Parties with respect to the matters decided, and shall be complied with by the Parties. In such judicial proceedings, neither Party, without the prior written consent of the other Party, shall be entitled to contend that such arbitration award should be vacated, modified or corrected, and the Parties hereby expressly waive all other rights and remedies that might otherwise be available in such judicial proceeding. Silver Cloud waives any obligation to participate in or exhaust any Tribal court remedies. Silver Cloud agrees that it shall not initiate any action against NPA, or its members or Affiliates, in any Tribal court or Tribal forum, and waives to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue in the courts referenced above, including any claim that the action has been brought in an inconvenient forum. NPA does not consent to Tribal court jurisdiction. If such federal court fails to find jurisdiction to enforce the Arbitration Decision, the Parties may bring an action in the appropriate court in the state of Delaware for the sole purposes of enforcing the Arbitration Decision and under the same terms and restrictions as federal court.

(e) <u>Limited Waiver of Tribal Sovereign Immunity</u>. Silver Cloud does not waive its sovereign immunity except as expressly set forth below in this Section 11. This limited waiver is limited solely to Silver Cloud, and does not constitute a waiver of sovereign immunity by and shall not be deemed a waiver of the rights, privileges, and immunities of the Tribe or any other Tribal entity or subdivision, or extend to an action against the Tribe or any other Tribal entity or subdivision. The Parties acknowledge that Tribe intends specifically to protect from suit real, personal and other property of the Tribe that is used in or associated with gaming operations of the Tribe and revenues of such gaming operations. Silver Cloud hereby waives its sovereign immunity from unconsented suit pursuant to the dispute resolution provisions of this agreement. This limited waiver entered into by Silver Cloud is expressly limited to actions to (a) interpret the provisions of this Agreement, and (b) to enforce an Arbitration Decision including execution or collection of monetary damages subject to the limitations upon enforcement set forth in Section 11(f) of this Agreement. This limited waiver of sovereign immunity extends only to actions brought by the NPA, its successors and assigns (and not any other party) against Silver Cloud for claims of any kind arising under this Agreement. The limited waiver of sovereign immunity as provided for in this Section shall expire at the conclusion of the longer of (i) one (1) year after the termination or expiration of this Agreement, or (ii) at the conclusion of any mediation, arbitration or litigation matter with respect to this Agreement pending at the termination or expiration of this Agreement, including the conclusion of any potential appeals available from such proceedings and upon collection of any and all judgments and awards.

(f) <u>Limitation Upon Enforcement</u>. Any amounts due and owing to NPA are hereby limited solely to Silver Cloud. In no instance shall any enforcement of any kind whatsoever be allowed against any other Tribal body, entity or subdivision that has, at some point over the course of this Agreement, received funds from Silver Cloud through operation of its business.

5

12. **Counterparts and Execution.** This Agreement may be executed in counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of executed signature pages by facsimile transmission or by other electronic means (including by ".pdf") shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile or by other electronic means (including by ".pdf") shall be deemed to be their original signatures for all purposes.

13. **Privacy.** The parties agree to comply with all applicable privacy and data protection laws, rules and regulations including, without limitation, the Federal Trade Commission Act, as amended, ("FTC"), the Fair Credit Reporting Act, as amended ("FCRA"), and the Gramm-Leach-Bliley Act, as amended. ("G-L-B").

*[Signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first above written.

National Performance Agency, LLC

By: _/s/ illegible signature_

Name: Joshua S Landy

Title: President

Silver Cloud Financial, Inc.

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and delivered by their duly authorized officers as of the date first above written.

National Performance Agency, LLC

By:_____

Name:_____

Title:_____

Silver Cloud Financial, Inc.

By: *[signature]*

Name: Sherry Treppa

Title: Chairperson, Board of Directors

CONFIDENTIAL

Case 1:25-cv-00794-DAB-JGM    Document 52-3    Filed 03/11/26    Page 9 of 12

002262

# EXHIBIT A

## Services

| Services | Fees |
|---|---|
| Consulting services (including expert advice on technological issues involved in setting up Silver Cloud operations) and general call center services, but for the avoidance of doubt such services shall not include accounting services, funding or collection services, nor final credit decision making. | Each employee's hourly rate with NPA plus 30%, inclusive of all benefits as reasonably calculated by NPA in its sole discretion. |
|  |  |

Payment Terms:

NPA shall invoice Silver Cloud on approximately the 5th day of each month for the services provided in the prior month. Silver Cloud shall pay within twenty (20) days of receiving the invoice from NPA. NPA may assess a late payment on a daily basis assessed at an equivalent of 18% annual percentage rate until such late payment is made. Should Silver Cloud become more than ninety (90) days past due, NPA may suspend or terminate services under this Agreement.

# EXHIBIT B

## Services Levels

NPA shall provide the service levels listed below:

General Servicing.

    (1)    NPA shall provide, at its expense (except as otherwise set forth herein or in one of the exhibits hereto), personnel and equipment to act on behalf of and instructed by Client to both (i) receive and respond to incoming telephone calls, faxes, and emails from Client's customers and potential customers and (ii) contact Client's customers and potential customers;

    (2)    answer customer service inquiries received by NPA by telephone and/or email from Client's customers acting on behalf of and as instructed by Client;

    (3)    use Client's loan management system ("LMS") and other software systems in conjunction with the particular services provided by NPA;

    (4)    deliver an electronic file to Client of all debits and credits that the Client's LMS indicates should be made to Client's customer's file (the "Debit/Credit File").

    (5)    contact potential customers of Client ("Leads") provided to NPA by Client, acting on behalf of and as instructed by Client using scripts approved by Client;

    (6)    utilize faxing and electronic capabilities to receive and store application materials submitted by potential customers of Client, if necessary;

    (7)    utilize Client's application materials and Client's guidelines and take necessary actions to determine which of the Leads are eligible pursuant to or satisfy the criteria in such underwriting guidelines ("Verified Applicants"); and

    (8)    deliver to Client such information as is necessary to determine whether to fund the loans for the Verified Applicants and credit such potential customers' accounts with the appropriate amounts as part of the Debit/Credit File.

    (9) If NPA has any objection to Client's guidelines, scripts, or instructions, NPA shall raise such objection promptly and the Parties agree to work diligently and in good faith toward a resolution. Irrespective of whether NPA objects, the Parties acknowledge that Client shall be solely responsible for Client's guidelines, scripts, and instructions.

    (10)    NPA hours of operation for providing customer services under this Agreement have been mutually agreed upon between Client and NPA and are as follows:

1. Weekdays – The Parties agree that NPA will provide the customer services described in this Agreement between the hours of 8 am CST and 5 pm CST Monday through Friday, excluding holidays. "Holidays" shall be limited to all statewide and/or federally recognized holidays."

2. Holidays -- The Parties agree that NPA will provide the customer services described in this Agreement between the hours of 8 am CST and 12 pm CST on the following statewide or federally recognized holidays and associated days corresponding to a holiday: (i) Birthday of Marin Luther King, Jr.; (ii) Washington's Birthday; (iii) Columbus Day; (iv) Veteran's Day; (v) Christmas Eve; and (vi) New Year's Eve.

3. The Parties agree that NPA will be closed and not provide the customer services described in this Agreement on the following statewide or federally recognized holidays: (i) New Year's Day; (ii) Memorial Day; (iii) Independence Day; (iv) Labor Day; (v) Thanksgiving Day; and (vi) Christmas Day.

**Client's Service-Related Duties**. Client shall comply with the General Service-Related Duties listed below.

**General Service-Related Duties**. Client shall:

(1) provide a physical address that may be conveyed to Client's customers and potential customers and provide telephone number(s), email address(es), and fax number(s) that will be used solely by Client's customers and potential customers to NPA and cooperate in NPA's efforts to obtain access to such numbers and address(es);

(2) provide NPA, with real-time access to all information relating to its customers and potential customers necessary for NPA to perform the General Servicing and specific services Client has elected, including but not limited to real time access to Client's LMS, and ten (10) days advance notice of any updates or changes to any system or software utilized by Client (Client acknowledges that such changes and updates will necessitate additional training and will likely effect the Service Level.)

(3) provide and/or approve any other instructions, guidelines, or scripts NPA should utilize in providing services under this Agreement;